MUTUAL LIFE INSURANCE COMPANY v. HYNSON.

Opinion delivered May 24, 1926.

1. INSURANCE—IMPOSING CONDITION TO REINSTATEMENT.—Where a life insurance policy contained no condition to reinstatement, the company could impose any condition not contrary to public policy on which reinstatement might be had.

2. INSURANCE—REINSTATEMENT—AUTHORITY OF LOCAL AGENCY.— Where a life insurance policy contained no provision for reinstatement, and the application for reinstatement recited that reinstatement should not take effect until approved by the home office, a local agency had no authority to reinstate the policy, and its acceptance of a check did not constitute a reinstatement; and it was immaterial that insured died before the check was returned by the home office after refusing to reinstate the policy.

Appeal from Fulton Circuit Court; *John C. Ashley,* Judge; reversed and dismissed.

*Frederick L. Allen, Oscar E. Ellis, Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*H. A. Northcutt, Geo. T. Humphries* and *Thos. T. Dickinson,* for appellee.

HART, J. This is an appeal from a judgment in favor of Carrie E. Hynson against the Mutual Life Insurance Company of New York, which was entered on the verdict of a jury on a life insurance policy.

Counsel for appellant seek to reverse the judgment on the ground that the undisputed evidence shows that

the policy sued on had been forfeited and had not been reinstated.

In March, 1905, the Mutual Life Insurance Company of New York issued a policy in the sum of $1,000 upon the life of L. M. Hynson in which his wife, Carrie E. Hynson, was named as the beneficiary. The policy was a twenty-year deferred dividend policy, and no dividend would be accumulated or accredited to the policy unless the insured was alive and the policy in force on March 16, 1925.

In June, 1921, L. M. Hynson applied for and received a loan on the policy for the amount of $378. A note was given for this amount to the company, which was not paid at maturity. On April 17, 1922, the policy was canceled for the nonpayment of the loan due on March 16, 1922, and for the nonpayment of the annual premium due on the same day. At the time the policy was canceled it was of the value of $378, and the entire cash surrender value was applied in liquidation of the loan.

The records of the company show a cancellation of the policy on April 17, 1922, and the reason is that the company gives to each policy-holder thirty-one days time after due within which to pay or renew the loan. The policy contained no provision for reinstatement, and on the contrary contained a provision as follows: "Notice—No person, except an executive officer of the company or its secretary at its head office in New York, has power on behalf of the company to make, modify or alter this contract, to extend the time for paying a premium, to bind the company by making any promise or by accepting any representation or information not contained in the application for this contract."

On March 16, 1924, L. M. Hynson wrote to the Mutual Life Insurance Company of New York at its home office to advise him of the status of his policy. On March 24, 1924, the company advised him that his policy had lapsed for nonpayment of the premium and interest on the loan due March 16, 1922.

This letter was written by the manager of the Memphis agency of the insurance company, and informed Hynson that it had written the home office to quote the cost of reinstating the policy, and that as soon as the information was received he would be notified. On April 7, 1924, the manager of the Memphis agency wrote L. M. Hynson at Mammoth Spring, Arkansas, that he was advised by the home office that it would consider the restoration of the policy upon receipt of satisfactory certificate of health, restoration of the loan agreement, and the payment of $149.34, made up of certain items which are set out. The letter inclosed a health certificate form and a restoration note. The letter concludes as follows: "If health certificate is furnished and approved and the $149.34 paid, your policy will be fully reinstated."

R. T. Hynson, a brother of L. M. Hynson, went to the Memphis agency of the insurance company to see about getting the policy of his brother reinstated. The manager of the office told him that there was a further loan value on the policy, and that by the execution of a new note for the amount of the old loan and the additional loan value with a payment of $50.34 in cash the policy would be reinstated. R. T. Hynson took the application for reinstatement to Mammoth Spring, Arkansas, and procured his brother's signature to it.

The application contained the following: "It being understood and agreed that such placing in force shall not take effect until this application shall have been finally aproved at the said company's home office in New York City, nor until the said premium and interest have been paid." R. T. Hynson also procured the signature to a note for $477 as required by the manager of the Memphis agency. He delivered this note, together with the health certificate and a check for $50.34, to the manager of the Memphis agency of the company, and said that he considered the transaction closed.

On this point we quote from his testimony on direct examination as follows: "Q. Did he tell you that this policy was reinstated when you delivered this note for

$477 and the check for $50.34? A. Yes sir. Q. What did he say about the policy being reinstated? A. I asked him what it would take to reinstate the policy, and he gave me these papers, and when they were executed the policy was to be reinstated, and when I gave him the note and check there was no further conversation after that.''

On the same point we quote from his cross-examination as follows:

''Q. You took the papers and delivered them, with your check for $50.34, at Memphis? A. Yes sir, those papers and my check for $50.34. Q. On your second visit did you talk to the same man? A. Yes sir. Q. You had no further conversation about the matter? A. No sir, no further conversation, except to hand him the papers, and he looked them over and said they were all right.''

On May 29, 1924, the manager of the Memphis agency wrote to L. M. Hynson at Mammoth Spring, Arkansas, the following:

''We regret to advise you that the company has declined to reinstate your policy. We will return the loan agreement recently executed as soon as it can be sent to us from the home office.''

On June 1, 1924, L. M. Hynson wrote to the manager of the Memphis agency to advise him the reason why the company would not reinstate the policy, and also to inform him if he was entitled to any surrender value, as the policy lapsed for nonpayment on March 16, 1922.

On June 4, 1924, the manager wrote to L. M. Hynson as follows: ''Referring to your letter of the 1st, we do not know why the home office declined to reinstate this policy, but are today writing them, stating that you would like to know why, and will write to you farther upon receipt of their reply.

''The full cash value of this policy on March 16, 1922, was $378, which amount you had previously drawn as a loan. There was therefore no reserve left to be applied to the purchase of paid-up insurance.''

On June 16, 1924, the manager of the Memphis branch office wrote to L. M. Hynson at Mammoth Spring, Arkansas, inclosing a copy of the letter from the home office telling why it would not restore the policy in question. On June 27, 1924, the manager of the Memphis agency wrote to R. T. Hynson in Memphis. the following:

"Policy Number 1574519—L. M. Hynson.

"Dear sir: We are returning herewith loan note executed by L. M. Hynson under this policy, which the company has declined to reinstate.

"If you will have him sign and return the inclosed voucher, we will send our check for $50.34 covering refund of amount paid as balance required to complete the loan."

L. M. Hynson was suddenly killed in Fulton County, Arkansas, on June 22, 1924. The home office had a committee which alone was authorized to pass on applications to restore policies which had lapsed for the nonpayment of premiums, or which had been canceled for the nonpayment of loans. The application of L. M. Hynson for the restoration of his policy was submitted to this committee, and it reached a decision on May 22, 1924, and at once caused the applicant to be notified that his application to restore his policy had been denied. This was the usual method of procedure in such cases.

This is the substance of the evidence, presented in the light most favorable to the plaintiff. It will be noted from our statement of facts that the policy itself did not contain any provision for its reinstatement after forfeiture. On the contrary, it contained a clause notifying the insured that no person except an executive officer of the company, or its secretary at its head office in New York, had the power to modify any offer of contract of insurance or to bind the company by making any promise, or by accepting any representations or information not contained in the application for insurance.

The insured was advised by a letter which he received from the manager of the Memphis agency that it

would be necessary to apply to the home office. In the written application which he signed to procure the reinstatement of the policy there was a clause that the policy would not be reinstated until the application had been finally approved at the company's home office in New York City.

Thus it will be seen that it was expressly stipulated that the reinstatement should not take effect until it was approved at the home office. Inasmuch as the provisions of the contract did not provide for the reinstatement of the policy, it was optional with the company to impose any condition which it pleased, not contrary to public policy, on which reinstatement might be had.

It is conceded that the undisputed evidence shows that the policy had been forfeited, and that the home office in New York City had refused to reinstate the policy. But it is sought to uphold the judgment upon the ground that the Memphis office had at least the apparent authority to represent the company in reinstating the policy, and that its action in the premises bound the company.

The Memphis agency had no real or implied authority to reinstate a policy. There was no actual reinstatement. Hence the plaintiff must establish the doing of something that was indispensable to the right to reinstate. This he has wholly failed to prove. It is true that his brother testified that, when he returned the application, the manager of the Memphis agency accepted it, together with a check for the balance necessary for a reinstatement of the policy, and that he considered the matter closed. This is not sufficient. It is apparent from his direct examination and from his cross-examination, which is explanatory, that he merely handed in the application and other papers accompanying it to the manager of the Memphis agency. The act of the manager, under the circumstances, could in no sense be said to be an agreement by the company to reinstate the policy.

The application on its face stated that the reinstatement should not take place until it was finally approved at the company's home office in New York City. All the

correspondence between the parties showed that the manager was sending all communications relative to the matter to the home office in New York City, and that the reinstatement would be passed on there.

The case is entirely unlike that of *Ætna Life Ins. Co. v. Duncan,* 165 Ark. 395, where the reinstatement was upheld. In that case the policy itself contained a clause for reinstatement, and the testimony of the general agents of the company showed that they were authorized to solicit the reinstatement of policies and to reinstate the same when the company had sent down the reinstatement receipts showing that the application for reinstatement had been approved by the company.

The cancellation of the policy resulted from the insured's own acts in failing to comply with its provisions, and, as has been pointed out, the policy containing no provision on the subject, the company might impose such conditions for reinstatement as seemed to be advisable to it.

It is true that the insured died before the check for the $50.34 was returned; but the manager of the Memphis agency had written to the insured that the amount of the check would be sent to him as soon as it obtained authority from the home office. This was according to their usual method of procedure in cases of this sort. The insured has recognized that the company might impose any terms that it saw fit as a condition to restoring the policy. This is shown by his letter of June 1, 1924, in which he asks the manager of the Memphis agency to advise him the reason why the company would not reinstate the policy, and also to inform him if he had any surrender value under it.

It appears from the record that the $50.34 is held by the company to be refunded to the duly qualified administrator of the estate of L. M. Hynson, deceased, when said administrator will accept the same.

The result of our views is that the undisputed evidence shows that the policy was not reinstated, and that

the court erred in refusing to direct a verdict for the defendant company.

For this error the judgment will be reversed, and, inasmuch as the case appears to have been fully developed, the cause of action will be ordered dismissed here.