### YAFFE v. UNION CENTRAL LIFE INS. CO.
Civ. No. 260.

District Court, W. D. Arkansas, Fort Smith Division.

Feb. 20, 1943.

Hardin, Barton & Shaw, of Fort Smith, Ark., for plaintiff.

Buzbee, Harrison & Wright, of Little Rock, Ark., for defendant.

MILLER, District Judge.

#### Statement.

This cause in which plaintiff seeks to require the defendant to reinstate a certain policy of life insurance was tried to the court, without a jury, on February 8, 1943. At the conclusion of the trial and statement by the attorneys representing the parties of their contentions, the court requested the filing of memorandum briefs, which has been done. After considering the testimony and the most excellent briefs of able counsel, the court files the following findings of fact and conclusions of law.

#### Findings of Fact.

1. The plaintiff is a resident of the Fort Smith Division of the Western District of Arkansas. The defendant is a corporation organized and existing under the laws of the State of Ohio and is authorized to engage in the business of life insurance in Arkansas. The amount involved herein exceeds in value the sum of $3,000, exclusive of interest and costs.

2. Effective October 19, 1924, the defendant issued and delivered to plaintiff a policy of insurance upon which plaintiff

paid all premiums until the premium due July 19, 1941. Prior to October 19, 1940, the premiums were paid yearly in advance, but on that date a premium extension agreement was entered into providing that thereafter the annual premium should be paid in monthly installments of $13.82.

3. A grace of thirty-one days for the payment of any premium, after the first, was allowed by the policy and upon the failure to pay a premium the policy lapsed.

4. The monthly installments due July 19, August 19, and September 19, 1941, were not paid when due. On October 13, 1941, at the request of defendant's office at Little Rock, Arkansas, plaintiff mailed his check for $28.90, together with executed short form of application for reinstatement, without medical examination, to the Little Rock office, then in charge of Joe W. Cooper, to cover the installments due July 19, and August 19, 1941. The check and application for reinstatement were received by the Little Rock office and premium receipt issued for the check. The application for reinstatement was transmitted to defendant's home office in due course of mail by the general agent, Joe W. Cooper. It provides, inter alia, "This application for reinstatement will not be considered unless the arrears have been conditionally deposited with the company."

5. On October 17, 1941, the secretary of defendant wrote plaintiff advising him that the policy had lapsed on July 21, 1941, "because the premium, or installment thereof, then due was not paid." It also advised him that after paying the indebtedness against the policy that it was automatically continued as paid-up term insurance for $8,600 until January 17, 1942.

The general agent, Joe W. Cooper, was sent a copy of this letter which he received prior to October 20, 1941, on which date he wrote plaintiff requesting him to remit by return mail check for $13.82 to cover the last monthly installment of the October 19, 1940 premium, which balance was due September 19, 1941.

On October 21, 1941, plaintiff wrote the defendant at its home office of Cincinnati, Ohio, that on October 13, 1941, he had mailed check for $28.90 for premium due on the policy. Plaintiff also said, "Today I received notice that this policy was lapsed. Please look into this matter at once as I am interested in keeping this insurance valid."

On October 22, 1941, plaintiff sent the check for $13.82 to the Little Rock office and in the letter of transmittal said, "I received notice my insurance had lapsed from your head office after I had sent you a check for $28.90. Please investigate this as soon as possible."

6. On October 25, 1941, the general agent, Cooper, wrote plaintiff and acknowledged receipt of the check for $13.82, covering balance of the extension agreement of the October 1940 premium. He also stated, "We received a copy of the letter the Home Office wrote you in which it was stated that your policy had lapsed, and we immediately wrote them of the payment you had made for reinstatement. You have no doubt received a letter from them by this time advising you that your policy has been reinstated."

7. The policy contained the following provisions:

"E 2 Reinstatement. This policy will be reinstated at any time within three years after default in payment of premium (but not after expiry or maturity date, if any), provided it has not been surrendered, on evidence of insurability satisfactory to the Company and the payment of premium arrears with six per cent interest per annum and the payment or reinstatement of any other indebtedness and advances hereon with accumulated interest."

"E 6 Authority. None of the terms of this policy shall be modified, nor any forfeiture under it waived, save by an agreement in writing, signed by the President, a Vice-President, the Secretary or an Assistant Secretary, whose authority for this purpose shall not be delegated."

8. On October 27, 1941, the general agent, Cooper, wrote the plaintiff advising that the company (defendant) had not reinstated the policy because certificate of health executed by one of company's examiners was required for consideration before action could be taken on the application for reinstatement. Enclosed with the letter was the required form of health certificate and plaintiff was urged to have the same completed by one of the resident physician examiners whose names and office addresses were also furnished.

On November 11, 1941, plaintiff submitted himself to Dr. Walter G. Eberle at Fort Smith, Arkansas, for physical examination and the examining physician completed the health certificate and it was for-

warded to the home office of defendant on November 15, 1941.

On November 17, 1941, the general agent, Cooper, also sent to the home office of defendant the policy and signed loan agreement. In that letter the general agent also stated that he had forwarded the executed health certificate on November 15, 1941.

The defendant refused to reinstate the policy and on December 8, 1941, the general agent so advised the plaintiff.

9. The payments made by plaintiff for the premium installments due July 19, August 19 and September 19, 1941, were returned to plaintiff and on January 15, 1942, this suit was filed to require defendant to reinstate the policy.

## Conclusions of Law.

1. The court has jurisdiction of the parties hereto and the subject matter hereof.

2. On October 13, 1941, when the plaintiff, at the request of the general agent of defendant, sent check for $28.90 representing the installments that were due on July 19 and August 19, 1941, the policy, according to its terms had lapsed, and application for reinstatement accompanied this check. The action of the general agent on October 20, 1941, in requesting that plaintiff send check for $13.82 in payment of the installment of the October, 1940 premium that was due September 19, 1941, and the act of the plaintiff on October 22, 1941, in sending the check occurred at a time when both the general agent and the plaintiff had been advised by the home office of defendant, that the defendant considered that the policy had lapsed on July 21, 1941.

Were the actions of the general agent in requesting such payments and the receipt of same by him an effective waiver of the lapse or forfeiture?

A general agent of an insurance company may waive provisions in a policy of insurance as to forfeitures for non-payment of premiums and which are for the exclusive benefit of the insurer. Reserve Loan Life Insurance Company v. Compton, 190 Ark. 1039, 82 S.W.2d 537; Pacific Mutual Life Insurance Company v. Carter, 92 Ark. 378, 123 S.W. 384, 124 S.W. 764.

One dealing with such an agent without notice of restrictions upon his authority has a right to presume that he has authority co-extensive with its apparent scope. Reserve Loan Life Insurance Company v. Compton, supra, and cases therein cited.

Here the plaintiff permitted the policy to lapse for non-payment of monthly installments of the premium before any request for payment was made by the general agent. When the check for $28.90 was sent by plaintiff to the general agent, there was enclosed an application for reinstatement. The plaintiff was advised, as was the general agent, by letter dated October 17, 1941, that the policy had lapsed because the premium or monthly installment thereof had not been paid.

It was specifically provided in the application for reinstatement that the application would not be considered unless the arrears were conditionally deposited with the company. The last monthly installment of the October 1940 premium was due on September 19, 1941, and the general agent, with full knowledge that the policy had lapsed and that the application for reinstatement was pending, requested the plaintiff to pay that installment of $13.82, which plaintiff did on October 22, 1941.

Such action on the part of the general agent was not a waiver of the forfeiture. The question presented by the facts here is answered by the Supreme Court of Arkansas in the case of Mutual Life Insurance Company v. Hynson, 171 Ark. 218–223, 283 S.W. 357, 359, where it is said:

"It is conceded that the undisputed evidence shows that the policy had been forfeited and that the home office in New York City had refused to reinstate the policy. But it is sought to uphold the judgment upon the ground that the Memphis office had at least the apparent authority to represent the company in reinstating the policy, and that its action in the premises bound the company.

"The Memphis agency had no real or implied authority to reinstate a policy. There was no actual reinstatement. Hence the plaintiff must establish the doing of something that was indispensable to the right to reinstate. This he has wholly failed to prove. It is true that his brother testified that when he returned the application the manager of the Memphis agency accepted it together with a check for the balance necessary for a reinstatement of the policy, and that he considered the matter closed. This is not sufficient. It is

apparent from his direct examination and from his cross-examination, which is explanatory, that he merely handed in the application and other papers accompanying it to the manager of the Memphis agency. The act of the manager under the circumstances could in no sense be said to be an agreement by the company to reinstate the policy.

"The application on its face stated that the reinstatement should not take place until it was finally approved at the company's home office in New York City. All the correspondence between the parties showed that the manager was sending all communications relative to the matter to the home office in New York City, and that the reinstatement would be passed on there."

The right of reinstatement was contractual. The policy provided the manner and method of reinstatement, as set forth in the findings of fact.

No contention is made by plaintiff that the evidence of insurability submitted by him in support of the application for reinstatement was sufficient and that the defendant arbitrarily and without right refused to accept such proof.

The plaintiff's contention is that the forfeiture was waived by the general agent requesting payment of the premium installment on October 20, 1941, that was due September 19, 1941.

The fact that the defendant retained the payments made by the plaintiff after the policy had lapsed for a period of several weeks did not in any way mislead the plaintiff. He understood from correspondence with the company itself, as well as with the general agent, that the policy had forfeited and that as a condition for the consideration of the application for reinstatement all installments in arrears were required to be deposited with the company. The most that can be said is that the general agent had expressed the hope that the defendant would act favorably upon the application for reinstatement.

Upon the authority of Mutual Life Insurance Company v. Hynson, supra, and Union Life Insurance Company v. Bolin, 201 Ark. 555, 145 S.W.2d 734, the question here presented must be answered in the negative. The forfeiture of the policy was not waived by the general agent.

Therefore, judgment dismissing the complaint at the cost of plaintiff will be entered.