Charles E. FRAZIER, d/b/a EXECUTIVE MOTORS,
INC. *v.* FARMERS INSURANCE EXCHANGE

CA 80-511                                    615 S.W. 2d 409

Court of Appeals of Arkansas
Opinion delivered May 20, 1981

342

*John Biscoe Bingham*, for appellant.

*Laser, Sharp & Huckabay*, for appellee.

GEORGE K. CRACRAFT, Judge. The appellant, Charles E. Frazier, d/b/a Executive Motors, Inc., appeals from the action of the Circuit Court of Pulaski County dismissing his claim against the appellee, Farmers Insurance Exchange, his insurance carrier, for a loss alleged to have been sustained as a result of a theft of a motor vehicle belonging to the appellant. He asserts on this appeal that the trial court erred in its construction of the "newly acquired vehicle" clause contained in that policy and in failing to find that the appellee, through the action of its agent, should be estopped from asserting the cancellation of the policy as a defense to the newly acquired vehicle provision. We do not agree.

The facts are essentially not in dispute. The appellant, Charles E. Frazier, engages in the used car business in the City of Little Rock. On August 5, 1978, he purchased a policy of insurance from appellee which provided both

personal and business insurance coverage to the appellant and his used car business. The business portion of the insurance coverage provided only liability coverage for the vehicles contained in appellant's inventory. The policy also contained personal coverage providing liability, collision and comprehensive coverage to designated vehicles which were to be personally used and owned by appellant and his family.

At the time the policy was purchased only a portion of the premium was paid by the appellant, the balance being due within a sixty day period. The balance was not paid in the prescribed period and the appellant was given notice of cancellation, effective December 31, 1978. The policy was reinstated on January 23, 1979, by payment of the prescribed premium. The reinstatement policy then showed the period of coverage to be from January 23, 1979 to August 28, 1979, thus excluding the twenty-three day period during which the policy had been cancelled for nonpayment of premiums, but extending the period of insurance for twenty-three days beyond the expiration date of the original policy. On January 18, 1979, during the period of time that the policy was cancelled, the appellant acquired a new 1979 Scottsdale, four-wheel drive pickup truck, alleged to be for his personal use. On January 26, 1979, a date subsequent to the reinstatement, that vehicle was stolen and never recovered. No notice of its acquisition was given to the appellee until after that loss had occurred. At the time the policy was reinstated there were two vehicles described in that policy, a 1977 Datsun and a 1978 Cadillac. No mention was made at that time of the Scottsdale pickup truck. Appellant contends that the Scottsdale pickup truck was a "newly acquired automobile" as defined in the policy and was thereby automatically covered for the period of at least thirty days. Appellee contended, and the trial court agreed, that as the policy was not in force at the time that vehicle was acquired the newly acquired automobile clause did not apply.

The policy provision in question is as follows:

(d) Newly acquired automobile. An automobile ownership of which is acquired by the named insured (a) if it

replaces the described automobile and the named insured notifies the company within thirty days following the date of its delivery to him or within the policy term then current, whichever is the longer period of time, or (b) if it is an *additional automobile and the company insures all automobiles owned by the named insured at such delivery date*, and the named insured notifies the company within thirty days following the date of its delivery to him; but the insurance with respect to the newly acquired automobile does not apply to any loss against which the named insured has other collectible insurance. The named insured shall pay any additional premium required.

The appellant contends that the reinstatement of a policy is merely a revival and restoration of the original policy, that the rights of the parties are to be measured by the terms of the policy alone, and that upon payment of premiums and reinstatement of the policy the forfeiture is set aside and coverage is reinstated as if it had never been interrupted. He argues that under such a rule, this was clearly "a newly acquired automobile" as defined in the policy — one acquired while the policy was in force. In support of his position the appellant relies upon *New York Life Insurance Company* v. *Campbell*, 191 Ark. 54, 83 S.W. 2d 542. The policy of insurance involved in *Campbell* was one of life insurance which contained an express provision and agreement that the policy might be reinstated at any time within five years after default, upon written application by the insured and evidence of insurability acceptable to the company, and upon payment of overdue premiums. The court held that the right of reinstatement was not a gratuity on the part of the insurer but a contractual right, and that the insurer had no right or authority to enlarge the terms upon which that reinstatement may be effected. The policy before this court contained no such agreement with regard to reinstatement. The appellee was free under the terms of the policy to reject the application to reinstate or to reinstate upon any terms and conditions deemed appropriate. *Mutual Life Insurance Company* v. *Hynson*, 171 Ark. 218, 283 S.W. 357. The notice of cancellation specifically stated that *only* by payment of the premium before December 31, 1978,

would the coverage be continued "without interruption." It is to be noted that the reinstated policy was a new one containing new effective and termination dates.

If the policy was not in force on January 18th when the Scottsdale four-wheel drive pickup was "delivered" to the appellant, the appellee did not "insure all automobiles owned by the named insured" on the date of delivery. Appellee did not reinstate this insurance or insure any of appellant's automobiles until January 23rd when the reinstated policy with the new effective date was issued.

There is nothing ambiguous or vague about the newly-acquired automobile clause contained in this policy. It is clear in its terms and the parties are bound by it. The liberal construction rule contended for by the appellant here does not require the court to constrain contractual language for the purpose of creating coverage where none is clearly intended. *Southern Farm Bureau Casualty Ins. Co.* v. *Williams*, 260 Ark. 659, 543 S.W. 2d 467.

Appellant contends that, in any event, appellee was estopped by the conduct of its agent to raise this defense. At the trial of the cause the appellant testified that upon receiving the notice of cancellation he contacted appellee's agent and was advised "to forget the notice of cancellation and that the cancellation had been issued by mistake." There was also testimony by appellant that he was not required to pay the balance of the premiums until after the policies were delivered and they were not delivered at the time the cancellation notice was received. He further testified that the agent had informed him not to worry about it because he had a "binder" and that the notice was nothing more than a computer printout error. This, he asserts, raised the estoppel.

This testimony was denied by the agent and fully controverted. The agent not only denied making the statements, but specifically stated that he had no authority to disregard a cancellation and under no circumstances would have attempted to exercise such authority.

The trial court accepted the denials of the agent in its finding that there were no facts of such a nature here as would estop the appellee from relying upon the cancellation of the policy from the period between December 31, 1978, through January 23, 1979. The proper standard of review in this court is to determine whether the decision of the trial court is supported by substantial evidence. In determining whether or not such substantial evidence exists, this court views the evidence in the light most favorable to the trial court's finding and draws all reasonable inferences in favor thereof. The findings of the trial court will not be reversed unless clearly against a preponderance of the evidence. As the question of preponderance of the evidence turns largely on the credibility of the witnesses, we defer to the superior position of the trial court. *Hackworth* v. *First National Bank of Crossett*, 265 Ark. 668, 580 S.W. 2d 465.

We affirm.

GLAZE, J., not participating.