LIFE & CASUALTY INSURANCE COMPANY OF TENNESSEE
*v.* WALTERS.

4-7453                                          183 S. W. 2d 515

Opinion delivered November 13, 1944.

*Sidney F. Keeble* and *Moore, Burrow, Chowning & Hall,* for appellant.

*Kenneth C. Coffelt,* for appellee.

KNOX, J.   There is little or no conflict in the material facts presented by this record. On the 7th day of July,

1941, appellant issued a policy of insurance, insuring the life of John Freeman in the amount of $250. One Rosie Freeman was designated as beneficiary. One provision set out in the policy reads as follows: "Reinstatement— If the policy lapse for nonpayment of premiums, it may be reinstated upon application of insured made within one year from the date to which premiums have been duly paid and payment of all arrears, provided evidence of the insurability of the insured satisfactory to the company, be furnished, but such reinstatement shall not take effect, unless at the date thereof the insured is living and in sound health."

It is undisputed that John Freeman, the insured died on August 7, 1943. Thereafter appellee instituted this action, alleging that although her real name was Rosie Walters she was in fact one and the same person as the "Rosie Freeman" designated as beneficiary in the policy, and this fact is not seriously questioned by appellant.

Rarely were premiums paid when due, and defaults in payments thereof were more often the rule than the exception. For several weeks prior to August 3, 1943, the insured had failed to pay premiums. On that date the sum of $3.06 was paid to E. E. Thompson, agent for appellant, and an application for reinstatement of the policy, purporting to have been signed by the insured was delivered to Thompson. Appellee, Rosie Walters, testified that she actually made this payment. She introduced a receipt, which she testified was delivered to her by Thompson, and which reads as follows: "Life & Casualty Insurance Co. of Tennessee. Home Office Life & Casualty Building, Nashville, Tenn.

"8/3/1943

"Received from John Freeman $3.06, being the arrears of policy to 8/16, which the applicant desires the company to revive.

"Under no circumstances will the company be liable under said policy in case of sickness, accident, or death, until the policy has been revived on the books of the com-

pany and the money credited in the premium receipt book belonging to said policy.

"E. E. Thompson, Agent.

"If the company accept the revival application, the amount will be credited on the premium receipt book belonging with the policy, otherwise the money will be refunded."

As before stated, the insured, John Freeman, died on August 7, 1943, but appellant, the insurance company, was not promptly advised. On August 16, 1943, the application for reinstatement by John Freeman came up for consideration in the home office of appellant insurance company, and such company still having no information as to the death of insured, the home office approved such application.

Thereafter this action was brought, and at the trial appellant insurance company requested a peremptory instruction, on the ground that the approval of the application for reinstatement by the home office having occurred after the death of the insured was ineffectual to reinstate the policy. The request for such peremptory instruction was denied, and the cause submitted to the jury, resulting in a verdict in favor of appellee, Rosie Walters. The sole question argued by appellant here is whether the policy was reinstated by the action taken in the home office after the death of the insured.

Appellee contends that the record contains testimony to the effect that there had been defaults on prior occasions for such lengths of time as would cause the policy to lapse under the strict terms thereof, but that at such times appellant had accepted overdue premiums without requiring an application for reinstatement, and counsel for appellee says: "Rosie Walters testified that she had been as many as six payments or six weeks behind in the payment of premiums and that even when she was behind six weeks, which was two weeks more than the four weeks' provision in the policy for it to lapse, there never was even a request for an application for reinstatement and that the agent accepted this payment for this length

of time and recorded it in the receipt book. It is our contention that this was the custom established by the company in dealing with this negro woman. It waived the provisions in its policy which they argue on this appeal when it allowed their agent to carry on their business with this insured in this manner, and they are estopped now, it is our contention, from claiming the strict provisions of the policy, which they argue as a defense.'' Appellant contends not only that appellee has failed to testify to facts which could be construed as a waiver of this condition, or estop it from claiming the benefit of such provision, but it goes further, and quoting at great length from her testimony, argues that when considered as a whole the effect of appellee's testimony is that appellant's previous actions were not such as to justify the assumption that it had waived or was estopped to enforce such provision.

In the case of *American National Life Insurance Co.* v. *Otis,* 122 Ark. 219, 183 S. W. 183, L. R. A. 1916E, 875, Mr. Justice Wood, speaking for the court, said: ''We know of no ground of public policy which forbids an insurance company from including the above (conditions respecting reinstatement) as one of the conditions upon which its policyholders . . . who have been suspended for nonpayment of premiums may be reinstated. . . . In the absence of some statute or some well recognized ground of public policy forbidding such conditions the parties have a right to make them and are bound by them.''

The rule was again recognized and applied in the case of *McCann* v. *Supreme Tribe,* 171 Ark. 614, 285 S. W. 361.

An exhaustive note on the subject is found at 105 A. L. R. 478, which discloses that the Arkansas decisions are in accord with the weight of authority.

Since we have no statute forbidding the inclusion of such provision in the policy, and since such provision is not in conflict with public policy, and the parties have elected to make it a condition of the contract, they are bound by such provision.

Appellee appears to concede this as a general principle 'of law, but contends that under the facts here, appellant, on account of its prior dealings with the appellee and the insured in cases of previous defaults, has waived such provision and is estopped to enforce the strict letter of the contract. As authority for her contention appellee relies largely upon the case of *United Friends of America* v. *Avery,* 192 Ark. 620, 93 S. W. 2d 652. The second headnote succinctly states the rule declared as follows: "An insurance company's conduct in accepting for considerable time payment of premiums after expiration of days of grace estopped it from declaring the policy forfeited for failure to pay premiums till grace period had expired; and if it intended in the future to insist upon compliance with the by-laws in that regard, it must notify its policyholders to that effect."

A wide divergency exists between the facts set out in the opinion in the Avery case and the facts presented by the record in the case at bar. At the trial of the Avery case the insurance company had introduced the record of premium payments covering a period of nearly seven years. In the opinion prepared in that case for this court, Mr. Justice BUTLER, at great length reviewed the facts reflected by such record, and declared: "This record conclusively shows that from the inception of the contract the provisions of the by-laws with respect to the payment and acceptance of premiums were consistently ignored and disregarded."

To point out each and all of the material distinctions existing between the facts in the two cases would require a long and useless exploration, comparison and discussion of the facts revealed by both records. The investigations which we have already made are sufficient to convince us that the facts in the two cases are so different that the rule of the Avery case has no application in the case at bar. The record in the Avery case covered seven years, with many defaults which worked forfeitures of the policy, while here the period of time is much shorter, and defaults of a character which caused the policy to lapse far less frequently. In fact appellant argues that only once before had there occurred a default of such

character as would have justified appellant in demanding a formal application for reinstatement, when it was admitted no formal application was required. In the Avery case the insurance company defended on the ground that the policy had automatically forfeited for nonpayment of premiums—no formal application for reinstatement, such as we have here, had been executed and was pending at the time of death. These few points of difference are, we think, sufficient to reveal that the rule of the Avery case has no application here.

We are of the opinion that the trial court erred in refusing appellant's request for a directed verdict, and the judgment is therefore reversed and the cause dismissed.