**Francille W. BUTLER, Plaintiff,**

v.

**MFA INSURANCE COMPANIES, Defendant.**

No. 77–5034.

United States District Court,
W. D. Arkansas,
Fayetteville Division.

April 12, 1978.

---

Charles E. Hanks, Fayetteville, Ark., for plaintiff.

H. Franklin Waters, Crouch, Blair, Cypert & Waters, Fayetteville, Ark., for defendant.

OPINION

JOHN E. MILLER, Senior District Judge.

There is before the court a motion for summary judgment filed by defendant on March 8, 1978 in which it is alleged:

> "That the pleadings herein, together with exhibits attached thereto, plaintiff's answers to the request for admissions of

fact, and the affidavit of the employer of the defendants responsible for conversion of group-life insurance policies, all show that there is no genuine issue of any material fact and the defendant should be granted a summary judgment herein."

The original complaint of plaintiff was filed July 21, 1977. On September 20, 1977, she filed an amendment which in effect supersedes the original complaint.

On February 7, 1978, plaintiff filed her second amendment to the complaint.

A copy of the policy issued to the plaintiff is attached to the original complaint and provides:

"The amount of Life Insurance in effect at the date of death will be paid to the beneficiary last designated and on file with MFA Life Insurance Company.

"Premiums will be waived in the event of total disability (Total Disability is defined as that disability which wholly prevents the Agent from engaging in his customary occupation or any other occupation for remuneration or profit for which he might reasonably be qualified by his education and training) prior to age 60, beginning from the thirty-second day after the date of termination of the insurance because of such disability and continuing for one year. Due proof of total disability must be submitted not later than one year after termination of service. Year-to-year extension, for further periods of one year each, will be made if further proof of continuance of total disability is furnished three months prior to each such year.

"If the Life Insurance terminates because of termination of service of eligibility and application is made within thirty-one days following the end of the calendar month in which such termination occurred, MFA Life Insurance Company will issue, without evidence of insurability, an individual policy of Life Insurance other than Term Insurance (without Accidental Death and Dismemberment Benefit or Waiver of premium Benefit). Upon termination or amendment of the Master Policy a conversion right is available, in accordance with the Master Policy, to all Agents insured under the Policy for five or more years."

The defendant on October 4, 1977 filed answer to the original complaint and the first amendment thereto prior to the filing of the second and third amendments.

The defendant admits that it had issued the policy involved herein and pleads termination of defendant's insurance as set forth in the general information section of the policy.

On October 17, 1977, the plaintiff propounded 20 interrogatories to the defendant. Many of them are not particularly material to the question involved but in the answers that are material defendant admits that it terminated Melvin Butler as an employee on July 14, 1975 for failing to keep office open; closed for weeks at a time; customer complaints; unable and unwilling to serve customers. The employee was terminated by letter dated July 14, 1975 and the group insurance policy at the termination of his employment lapsed and the insured failed to convert the insurance within the time and manner provided for in the policy.

Interrogatory No. 14: What is plaintiff's employer's procedure to notify a terminated employee of his conversion privilege?

Answer: When group department receives notice of each terminating employee, we send them a memorandum stating that they may convert an individual policy. This must be done within 31 days from the date coverage terminates. We send the agent all the necessary forms at this time.

Interrogatory No. 16: Did plaintiff's employer or its employees or agents hold any of Melvin Butler's mail at his former office for a period of time after the termination of employment:

Answer: No.

The defendant also denied holding any of Mr. Butler's mail.

On October 27, 1977, the defendant filed ten requests for admissions of fact and on November 23, 1977 they were answered by

plaintiff in which she answered that she didn't know whether the agents' agreement attached as exhibit one to the requests was a true and correct copy.

Request No. 10: That Melvin Butler didn't exercise his right to convert his group life insurance with the defendants prior to his death.

Answer: No personal knowledge. Denied.

The insured was born July 19, 1917 and died December 20, 1975, five months and six days after the termination of his employment.

On April 4, 1978, plaintiff filed another motion to amend her complaint which was granted April 10, 1978 and on April 11, 1978 plaintiff filed her third amendment to the complaint in which she alleged:

"(1) That the plaintiff is a citizen of the state of Arkansas; that the defendant is a corporation organized and existing under the laws of the State of Missouri and the matter in controversy exceeds, exclusive of interest and costs, the sum of $10,000.

"(2) On March 1, 1968, defendant executed and delivered to its employee, Melvin Butler, its policy of insurance No. F G 50016–79 whereby in consideration of the payment of the premiums specified in the policy, which the said Melvin Butler agreed to pay monthly, the defendant insured the life of said Melvin Butler in the sum of $30,000 and defendant agreed by said contract of insurance to pay the said sum of $30,000 to plaintiff as beneficiary named in said policy immediately upon proof of death of said Melvin Butler, a copy of the certificate of insurance representing said insurance policy is attached as Exhibit 'A'.

"(3) Said insurance policy contained a provision whereby: Any agent whose contract or employment terminated because of Total Disability (which occurred while contracted or employed by MFA Insurance Company and while insured under this policy) may elect to continue participation under the policy, as well as such Agent's insured dependents, until the end of the calendar month in which Total Disability ceases.

"(4) Said Melvin Butler was terminated as an employee of defendant on July 14, 1975, as a result of total disability and said disability did not cease prior to his death.

"(5) Upon termination, said Melvin Butler was entitled to continue participation in the group policy as provided in the clause quoted above.

"(6) On or about July 25, 1975, said Melvin Butler made inquiry concerning continuation of his group policy coverage.

"(7) Defendant was under a contractual obligation to permit said Melvin Butler to continue participation in the group policy as provided therein.

"(8) Defendant wrongfully and fraudulently breached the above contractual duty on or about July 28, 1975, by informing said Melvin Butler that such continuation was not possible and that his only recourse was through defendant's conversion policies."

Jurisdiction is based on diversity of citizenship of the parties and amounts involved. 28 U.S.C.A. 1332.

The devious pleadings of the plaintiff and her contentions as made from time to time makes it difficult to logically interpret but one fact is clearly shown, neither the insured nor the plaintiff converted the policy within the 31 days following the end of July, 1975 as required by the policy which provides:

"If the life insurance terminates because of termination of service or eligibility and application is made within 31 days following the end of the calendar month in which such termination occurred, MFA Life Insurance Company will issue without evidence of insurability an individual policy of life insurance."

The court is filing an opinion in lieu of formal findings of fact and conclusions of law as provided by Rule 52 F.R.C.P.

The allegations contained in the motion of defendant for summary judgment has heretofore been set forth.

Rule 56(c), F.R.C.P., provides that a judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions of fact, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In 6 Moore's Federal Practice, Second Edition, Section 56.15, page 56–391, the learned author states:

"The function of the summary judgment is to avoid a useless trial; and a trial is not only not useless but absolutely necessary where there is a genuine issue as to any material fact.

"In ruling on a motion for summary judgment, the court's function is to determine whether such a genuine issue exists, not to resolve any existing factual issues; to deny summary judgment where there is a genuine issue as to any material fact; and to grant summary judgment, if at all, where there is no such issue, and on the substantive law the movant is entitled to judgment."

In the insurance field, the summary procedure has been effectively used and summary judgment rendered in cases arising, because of the termination of group insurance. 6 Moore's Federal Practice, Second Edition, Part 2, Section 31, page 56–881.

Without doubt, the insured, Melvin Butler, was terminated as an agent of defendant company at least by July 31, 1975, the date alleged in paragraph IV of the complaint of plaintiff. However, the actual date according to the records of the defendant as set forth in the affidavit of Eric Mumford was July 14, 1975. Even if the termination date set forth in the complaint is taken as the correct one, unless Mr. Butler exercised his privilege to convert his policy of insurance, the insurance terminated long before his death on December 20, 1975.

On November 23, 1977, the plaintiff responded to requests for admission of facts filed by defendant and admitted all the facts pertinent to the issues raised herein. She admitted that the insured wrote the note attached to Exhibit "C" of the request and it is thus clear from a mere reading of this note that the insured knew what his rights were in relation to conversion. She answered two of the requests, 9 and 10, by stating: "No personal knowledge. Denied." Such answer is insufficient pursuant to Rule 36 of the Federal Rules of Civil Procedure which provides that an answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless he states that he has made reasonable inquiry and that the information known or readily obtainable by him is insufficient to enable him to admit or deny.

The contention of plaintiff that the insured converted the insurance policy within the time permitted by the policy is totally without merit. See Affidavit of Eric Mumford filed March 8, 1978.

Immediately following the termination of the employment, the insured was advised by Stella Ravencraft that he was eligible to convert "your life and/or health insurance if you make application for these plans within 31 days from the date your coverage terminates."

On July 25, 1975, the insured in response to the notification advised defendant by letter as follows:

"I was terminated the 15th of July. They told me I could keep my group insurance but no one quoted me a price on me and my wife and I would like to know what my life insurance would be . . . so please let me know."

On July 28, 1975, she wrote the insured as follows:

"The only insurance which you can obtain is through our conversion policy. Attached are the forms for this. They must be returned during August 1, 1975. These are the same forms that I sent you July 9, 1975."

On August 6, 1975, the insured wrote Ms. Ravencraft that he did not receive the forms which were to be mailed back on the 1st of August. (The remainder of the letter is illegible.)

In the Affidavit of Mr. Mumford, heretofore referred to, he states that the insured was terminated July 14, 1975, and one of the group department's employees mailed to Mr. Butler the notice appearing as Exhibit "A" to the Affidavit to which the court has heretofore referred. That none of the correspondence which Stella Ravencraft mailed to the insured was returned undelivered and "Melvin Butler did not return to Stella Ravencraft the forms enclosed with her memos referred to above and did not file as required by the policy of group insurance attached to the complaint and sued on in this matter written notice of his election to convert same and did not as required by such group policy pay any premium therefor.

"That the group life insurance policy on the life of Melvin Butler was not converted pursuant to the provision of the policy of insurance attached to the complaint and sued on in this matter."

The plaintiff has produced no evidence that the insured moved to convert his insurance but the insured does say that he did not receive the forms that had been sent him on two different occasions but that, in the opinion of the court, is immaterial for the reason that he knew that it was necessary for him to convert the insurance within 31 days after the termination and with this knowledge he utterly neglected to comply with the provisions of the policy relevant to its conversion. Now, the plaintiff apparently contends that her husband was wrongfully discharged and at a time when he was disabled but if he was disabled on the date of his discharge he had been so disabled for five years during which time his services had been satisfactorily rendered.

Neither the insured nor plaintiff performed any of the conditions precedent to a reinstatement of the policy and his death on December 20, 1975, five months and six days after the termination of his employment, gives plaintiff no right to recovery.

In *Life and Casualty Insurance Company of Tennessee v. Walters*, 207 Ark. page 910, 183 S.W.2d 515 (1944), the court at page 913

of 207 Ark., at page 516 of 183 S.W.2d, cited *American National Life Insurance Company*, 122 Ark. 219, 183 S.W. 183, L.R.A.1916E 875 as follows:

"In the case of *American National Life Insurance Co. v. Otis*, 122 Ark. 219, 183 S.W. 183, 184, L.R.A.1916E, 875, Mr. Justice Wood, speaking for the court, said: 'We know of no ground of public policy which forbids an insurance company from including the above (conditions respecting reinstatement) as one of the conditions upon which its policyholders . . . who have been suspended for non-payment of premiums—may be reinstated . . . . In the absence of some statute or some well-recognized ground of public policy forbidding such conditions the parties have a right to make them and are bound by them.'

"The rule was again recognized and applied in the case of *McCann v. Supreme Tribe*, 171 Ark. 614, 285 S.W. 361.

"An exhaustive note on the subject is found at 105 A.L.R. 478, which discloses the Arkansas decisions are in accord with the weight of authority.

"Since we have no statute forbidding the inclusion of such provision in the policy, and since such provision is not in conflict with public policy, and the parties have elected to make it a condition of the contract, they are bound by such provision."

Also see annotation in 164 A.L.R., beginning at page 1057, where at page 1064 the annotator said:

"If the conditions precedent to a reinstatement of the policy, the most common of which are payment of premium arrears and furnishing satisfactory proof of insurability have not been performed by the insured, no reinstatement takes place, and his death during the pendency of the application gives his beneficiary no right to recovery."

Among the cases cited, the annotator at page 1066 said:

". . . it was held in *Life & Casualty Insurance Company v. Walters* (1944) 207 Ark. 910, 183 S.W.2d 515, where it fur-

ther appeared that the policy lapsed prior to August 3, that on that date an application for reinstatement was signed and delivered to defendant's agent, that insured died on August 7, and that on August 16 the application came up for consideration by defendant and was, without knowledge of insured's death on the part of the insurer, approved, that the trial court should have granted defendant's request for a peremptory instruction on the ground that, the approval of the application for reinstatement having occurred after insured's death, such approval was ineffectual to reinstate the policy. It was further held that the circumstances that on one occasion defendant had accepted past-due premiums without requiring the signing of an application for reinstatement and that on other occasions it had accepted premiums which were over due, although the lapse was not such as to require an application for reinstatement, was insufficient to show waiver on the part of defendant of the conditions precedent to reinstatement or an estoppel to enforce the strict letter of the contract."

In *Bruegger v. National Old Line Insurance Company*, (D.C.Wyo., 1975) 387 F.Supp. 1177, the court cited the *Walters* case supra with approval.

The insured having failed to comply with the provisions of the policy, all rights and benefits prescribed by the policy ended and the plaintiff cannot maintain this suit and since there is no genuine issue as to any material fact, judgment should be entered for defendant granting the motion for summary judgment and dismissing the complaint of plaintiff and all amendments thereto.