

*Evans & Evans,* for appellant.
*Bates, Poe & Bates,* for appellee.

SMITH, J. The appellant insurance association issued what the parties call a Whole Family Policy, in the sum of $500, covering the lives of Orin Holland, his wife Inez, and their three minor children, the policy being payable in full upon the death of any one of the five persons insured. The policy was dated August 26, 1936, and the premium thereon was payable monthly, quarterly, semi-annually, or annually, as the persons insured elected. If paid monthly, the premium was $1.91; if paid quarterly, $5.54, but, however paid, was payable on the 1st day of the month or of the quarter, etc. It was issued subject to the constitution and by-laws of the insurance association, which, by reference, were made a part thereof, and these provided that if the premium was not paid during the calendar month in which it was

due the insurance contract terminated and ceased to be effective.

It was further provided that ''Reinstatement thereof cannot be required, and no contract of insurance which shall have so terminated for non-receipt of payment within the time so limited, shall be reinstated except upon express written approval of reinstatement by one of the Executive Committee. . . .'' It was further provided, upon the subject of reinstatement, that the association shall be allowed thirty days from the receipt of the application for that purpose, and thirty days from its receipt of other information, in which to accept or reject such application, and that failure to accept the application in said limited time should constitute a rejection thereof, and special notice of rejection would not be necessary. A showing of good health of all the persons insured was a condition upon which reinstatement would be granted.

Accompanying the application for the policy, which, by its express terms, made the constitution and by-laws of the association a part of the contract of insurance, there was a remittance of the first monthly payment of $1.91, which carried the policy to October 1, 1936, and the premium for October was paid when due. The premium due November 1st was not paid, and on January 14, 1937, Mr. Holland executed an application for the reinstatement of the policy, with which he tendered the premiums for November and December, 1936, and for January and February, 1937. In this application representation was made that all persons insured were in good health. Acknowledgment was made of the receipt of the application for reinstatement, and the association advised that the remittance would be held in trust pending investigation, and the association later advised that the policy had been reinstated.

On April 27, 1937, Mr. Holland sent the association a second application for reinstatement, with a remittance of $5.54, covering premiums for the months of March, April and May, 1937, which application was similar to the first, and the policy was reinstated the second time.

On July 10, 1937, Mr. Holland filed a third application, identical in its recitals as to the good health of the parties insured, with the first and second applications, with a remittance covering premiums for June, July and August, 1937. In a letter from the association dated July 26, 1937, Mr. Holland was advised that the third reinstatement had been granted, but he was admonished to be more punctual in his premium payments, and he was advised that "The September premium must be paid by the end of that month or the policy will again lapse." The receipt of this remittance, which was offered in evidence, was for the sum of $5.73, the amount of three premiums if paid monthly.

Mrs. Inez Holland, the wife and one of the persons insured, died October 29, 1937, and this suit was brought to enforce payment of the policy after the association had refused to pay, and there was a trial and a verdict and judgment for the face of the policy, with interest, penalty and attorney's fees, from which judgment is this appeal.

The controlling question in the case is the one of fact whether the September premium had been paid during that month, although appellee insists, for reasons hereinafter discussed, that the association is estopped to deny receipt of the premium.

Mr. Holland testified that he remitted the September premium, the remittance being made by enclosing two one-dollar bills to the association. This remittance was 9 cents in excess of the premium. Mr. Holland testified that this remittance was made in the latter part of August, and that he later received a receipt from the association for the remittance about the middle of September. He did not testify whether the receipt acknowledged $1.91 or $2. he had lost the receipt and did not produce it at the trial. The receipt of this remittance was denied by the accounting officers of the association, who explained how remittances were received and credited. The mail is opened in a glass-enclosed locked room, and a report of all remittances is made to the head cashier. Individual cards are kept for each policy, upon

which remittances are respectively credited. These credits are totaled each day, and unless they balance with remittances the cashier is "over" in his account and receipts. The records were in balance. The cards on the policy here in suit were not credited with the $2 remittance, and the cashier was not over in his receipts for that amount. Moreover, it was shown that under the custom and practice of the association receipts were never sent out for monthly payments unless a receipt was requested and postage for that purpose was enclosed. Receipts were sent out for quarterly premiums or for a longer period of time. This was obviously for the purpose of avoiding the correspondence and the postage upon small and frequent payments made monthly.

Mrs. Inez Holland was carried to a hospital in the city of Fort Smith on the 8th day of October. She returned to her home October 13. She was again returned to the hospital October 18, where she died October 29, 1937. Her attending physician testified that acute Bright's disease was the cause of her death.

Clifford Hardin, an agent for the association residing in Booneville, Arkansas, handled the application for the insurance, and appears to have assisted Mr. Holland in his several reinstatements. His connection with the association was severed before the trial from which this appeal comes. Mr. Hardin testified that a brother of Mr. Holland called him over the telephone about 9 o'clock October 28th to see him in regard to the reinstatement of the policy. Of course, if the September premium had been paid, it was not necessary to reinstate the policy, as the month of October had not expired and the October premium could have been paid before the end of that month. Hardin testified that he prepared a reinstatement application, and inquired about the health of Mrs. Holland, and, in response to that question, wrote into the application the answer, "Wife has been ill, but is O. K. now." In his weekly report to the association under date of October 30th, Hardin included the application for reinstatement of the Holland policy, along with three others. After filling out the reinstatement

blank, he gave it to Holland's brother for execution by Holland, and it was returned by mail and received by witness on October 29th, and it was then mailed by witness to the association, along with the premiums for the months of September, October and November. This witness further testified that he had endeavored without success to induce the association to send receipts for monthly payments. Witness had no authority to reinstate a policy, and did not attempt to reinstate Holland's. He sent the application to the association for that purpose.

Holland and his brother both testified that the transaction in regard to filling out the blank application for reinstatement occurred October 8th or 9th, and not October 28th or 29th, but, even so, there was no occasion for reinstatement if the September premium had been paid, and Holland had the remainder of the month in which to remit the October premium.

Lawrence Holland, the brother, testified that Mrs. Holland was placed in the hospital on the 8th of October, and that he was directed by his brother to attend to the insurance. He got a check cashed on the 8th, and went to Booneville and saw Mr. Hardin that night and he paid the premium for a quarter of a year. He took the application to his brother which Hardin gave him, and when his brother had signed the application witness mailed it back to Hardin from Waldron. It was about 10:30 p. m., when he got the application from Hardin, and he drove in his truck to Fort Smith to have his brother sign it, and he arrived there about midnight, and Mr. Holland signed the application that night in Fort Smith, in which city Mrs. Holland was then confined in the hospital. After obtaining the signed application witness drove in his truck after midnight to Waldron, where he mailed the application to Hardin at Booneville. In the letter he enclosed a letter to Hardin from his brother, which will be later copied.

Mr. Holland testified that Hardin loaned him the money with which he paid the quarterly premium covering the months of June, July and August, and that he

received the receipt from the association, above referred to in the sum of $5.73, and that he had previously remitted $2 to pay the September premium, and received a receipt therefor, which he had lost. He testified that he had sent the association $2 in money two or three times to pay premiums, but he had no receipts for any of these $2 payments. He admitted signing the reinstatement application which his brother brought from Booneville. It was then in blank, and he only wrote his name on it. The application was signed about midnight, and at a filling-station. He wrote a letter to Mr. Hardin, to be returned with the application to Hardin, reading as follows:

"Dear Sir:

"In regard to my insurance my wife has been sick, but is better now, the reason I had not sent my insurance in is I did not have the money.

"Mr. Hardin I will sign the bottom of this paper and you fill the other out for me.

"I thank you for paying the insurance before and would have sent it before, but I did not have it.

"Orin Holland."

When he wrote this letter his brother made and kept a copy of it, which was offered in evidence.

The application for the reinstatement was received at the office of the association on November 1, 1937, and there was stamped on the reverse side thereof the notation: "Received, November 1, 1937. National Aid Life Association, Sales Department." There was printed in the application the recital that "The aforesaid policy in the National Aid Life Association having admittedly heretofore lapsed, application for the reinstatement or for a re-issue is hereby made, and as a basis therefor, I hereby covenant and warrant. . . ." The statement was written into the application: "Wife has been ill, but is O. K. now."

It is an undisputed fact that this statement was false, whether the application was signed on the 8th or 9th, or on the 29th, as it purported to be, as Mrs. Holland was taken to the hospital on the 8th.

The significance of this controversy about the date on which the application was signed is that if it was in fact signed on the 28th, Mrs. Holland was then in extremis, and died the next day, and the application could not have been received by the association until after her death. If it was signed on the 29th, Mrs. Holland was then dead.

The association wrote Mr. Holland the following letter:

"November 3, 1937.
"From the desk of V. Corder
"In Re; GW-1062IN
"Lapse: September, 1937

"Mr. Orin Holland,
"Waldron, Arkansas.
"Dear Mr. Holland:

"We wish to acknowledge receipt of your application for reinstatement of your lapsed insurance and your tendered remittance.

"All applications for reinstatement have to take their regular course through the Underwriting Department and this requires some little time.

"As soon as this application for reinstatement has been acted upon you will be promptly advised. In the meantime your remittance is being held in trust, pending final action upon the above mentioned application.

"Very truly yours,
"Underwriting Department

"Amount of Remittance held in trust $5.54.
"U-860."

Mr. Holland made no response that the policy had not lapsed for failure to pay the September premium, as the letter stated.

On November 11, 1937, the association was advised through its reporting agency that Mrs. Holland had died "One day last week," and on the next day the association wrote Mr. Holland a letter captioned as follows:

"November 12, 1937
"From the desk of K. Griffy
"In Re: GW-1062IN, Orin Holland
"Lapsed September, 1937."

It will be observed that this letter repeated the statement that the policy had lapsed on account of the non-payment of the September premium, and this letter stated that the association had just been advised that Mrs. Holland was dead and for that reason the policy could not be reinstated. No reply was received to this letter, but a letter dated November 18 was received from an attorney employed by Mr. Holland, in which it was stated that "Mr. Holland was under the impression the policy was intact at the time of the death of his wife, Mrs. Holland."

On November 29, 1937, the association issued its check for $5.54, payable to bearer as "Refund of all moneys tendered in connection with application for reinstatement of Policy GW-1062IN, dated October 29, 1937," and sent same to counsel for appellee.

On December 13, the attorney wrote the association that Mr. Holland declined to accept the check and release the claim under the policy, and on December 17 the association wrote the attorney stating that a photostat copy of the application was enclosed. The date appearing on this copy was October 29, 1937, and liability was denied. Suit on the policy had been filed before the receipt of this letter.

Mrs. Lottie Putnam, an assistant secretary of the association, connected with the Claims Department, testified that on October 4, 1937, she sent Mr. Holland a notice, addressed to him at his home in Waldron, advising him that the policy had lapsed for the non-payment of the September premium. The receipt of this notice was not denied, and no claim was then made that the September premium had been paid.

The signature of Mr. Holland to the application for reinstatement was witnessed by a person whose signature is not legible, but whose name as copied into the record

is E. J. Tomdxtuo. Who this person is was not explained, but there is no claim that that application had been altered or mutilated, except that it is insisted that the figure "2" was placed before the figure "9," making the date thereof appear the 29th, when the correct date was either the 8th or 9th. Hardin's testimony, as has been said, is to the effect that he filled out this application, as he had done on the three former occasions, and that the application as prepared by him required only Mr. Holland's signature. He denied that the letter from Mr. Holland to him above copied was enclosed in the letter containing the signed application.

We may assume that the jury resolved this conflict in the testimony against the association; but such finding is not conclusive of the case. It is immaterial whether the application was signed on the 8th or 9th or 29th of October if the premium had not been paid, and upon this issue we have set out the testimony at some length, for the reason that this question of fact is the controlling question in the case.

The policy was one for term insurance, without reserve value of any kind, which might extend the insurance if the premium had not been paid during the month in which it was due. We think if the undisputed testimony and that offered on appellee's behalf is alone considered, that no reasonable view thereof supports a finding that the September premium was paid. It is true appellee says that it was and that he received a receipt therefor. But the testimony herein recited so completely refutes and impeaches this testimony that it would be and is arbitrary to credit it. There is one fact alone which shows it is not the truth, and that is this. If the September premium had been paid, as Mr. Holland testified that it was, then the policy had not lapsed, and there was no occasion for this reinstatement. The haste shown by appellee's own testimony in mailing the application to Hardin was a waste of energy, as he had the remainder of that month in which to pay the October premium. There is, in our opinion, no reasonable view of this testimony which gives substantial support to the

finding that the September premium was paid, the testimony of Mr. Holland to the contrary notwithstanding.

Appellee insists that the association is estopped from saying that the policy had lapsed through the action of its agent in preparing and receiving the reinstatement application and through its conduct in leading Mr. Holland to believe that the policy was in force and that the remittance accompanying the application would be received, and in the retention of the remittance for an unreasonable time. None of these positions are tenable. Mr. Holland had the right to apply for reinstatement of the policy, but he did not have the absolute right to have it reinstated. The right to reinstate was conditional upon the continued good health of all the persons insured, and the association had the contractual right to thirty days' time within which to make that investigation. Within less than that time the application was rejected, for the reason that Mrs. Holland was not only not in good health, but was dead.

Now, the premium was not returned until after the death of Mrs. Holland, but it appears, from the facts herein stated, that it was returned within a reasonable time. There is no element of waiver in this case. *Garrett* v. *Pyramid Life Ins. Co.* 197 Ark. 193, 121 S. W. 2d 898, is conclusive of that question. It was there held that there can be no waiver of rights without knowledge of the facts upon which such rights are based, and that the mailing of notice to the insured of a premium due after the death of the insured without knowledge of the death could not affect the rights of the insurer under the policy of insurance as they existed at the time of the insured's death. That case is also authority for holding that testimony to the effect that a premium in question was paid cannot be said to make a question for the jury when other testimony so impeaches that testimony as to conclusively show its falsity. In the Garrett Case, *supra,* it was held that testimony to the effect that a premium had been paid was not substantial where its falsity was so conclusively shown that no reasonable mind could accept it as true. So with this case, we think the testimony

to the effect that the September premium was paid is not substantial and does not support the verdict of the jury.

It follows, therefore, that the judgment must be reversed, and as the cause appears to have been fully developed, it will be dismissed. It is so ordered.

Opinion delivered December 11, 1939.