UNION LIFE INSURANCE COMPANY *v.* BOLIN.

4-6129 145 S. W. 2d 734

Opinion delivered December 16, 1940.

*E. M. Arnold,* for appellant.

*Alfred Featherston,* for appellee.

SMITH, J. The appellant, Union Life Insurance Company, hereinafter referred to as the Company, issued to appellee, Clarence G. Bolin, a policy of life insurance in the sum of $1,000, upon the consideration of the payment of an annual premium of $54.83. The first premium was paid upon the delivery of the policy, and the second premium in the same amount was paid when due, but the third premium was not paid, and the policy lapsed on that account. The premiums were all payable May 28th.

Earl Hudgens is a soliciting agent for the Company. His business was to visit lapsed policy holders and to assist in their reinstatement. The undisputed testimony is to the effect that he had no other or greater authority. Hudgens saw Bolin on July 17, 1939, and Bolin testified that Hudgens solicited the reinstatement of the policy, and told him that if he would sign an application for reinstatement, and pay the delinquent premium, he would be reinstated. Bolin gave Hudgens a check for the premium, and signed a reinstatement application. Bolin was advised in a letter from the company dated October 11, 1939, that the application for reinstatement of the policy had been rejected, whereupon he brought this suit to recover the premiums paid.

In awarding judgment for these premiums the trial court made the following findings: That Hudgens told Bolin that he had a list of delinquents, and was making reinstatement of those policies, and that if appellee would sign the application and pay the premium he would be reinstated. The application for reinstatement contained a number of questions, the answers to all of which were written by Hudgens. These Bolin did not read. Bolin told Hudgens that he had recently had an operation, consisting of the removal of a tumor from his knee, and that a second operation would be required. Bolin testified that no request for additional

information was made to him. The check for the delinquent premium was not cashed, nor was it returned until its enclosure in the letter dated October 11th. Upon these findings the court held that, inasmuch as the right of reinstatement was a contractual right, given by the policy, it could not be regarded as a gratuity, and that inasmuch as the company retained possession of the check from July 17th to October 11th, its action in refusing reinstatement was arbitrary, and constituted a breach of the contract. Under the facts stated the court found that Hudgens had the apparent authority to reinstate the policy, and had done so.

Now, the right of reinstatement was not a gratuity, but was contractual. The policy which gave that right provided how it might be exercised. The provision is that at any time within three months after default in payment of premium, "upon written application by the insured, and presentation to the company, at its home office, of evidence of the insured's then insurability, satisfactory to the company, and upon payment of all premiums in default," the policy should be reinstated.

The application for reinstatement which Bolin signed provides that: "I also further agree that said policy shall not be considered reinstated until the application shall be approved by the company at its home office during my lifetime and good health. . . ." and that "any payment of premiums made by me in advance of any receipt therefor shall not be binding upon the company until this application is approved."

The application stated that the applicant was then in good health, and that since the date of the issuance of his policy he had not been sick from any cause, and had not consulted or been prescribed for or attended by a physician or practitioner for any cause. Bolin testified that these were not the answers given by him; which Hudgens denied; but the finding of the court sitting as a jury concludes this question of fact.

The company received information that Dr. Good had performed an operation by removing a tumor on Bolin's knee, and that a second operation would be re-

quired. The company wrote Dr. Good for information, and received the reply that he had performed the operation, and that Bolin was in charge of Dr. Duncan for post-operative treatment. Dr. Duncan was Bolin's family physician, and resided in Murfreesboro, where the trial from which is this appeal occurred.

On behalf of the company it was shown that three letters were properly addressed to Dr. Duncan asking for information about these operations. These letters were dated August 3rd, September 2nd, and September 14th, respectively. Dr. Duncan was not called to deny the receipt of these letters.

The testimony on behalf of the company was to the further effect that, failing to receive a reply to any of the letters written to Dr. Duncan, the Company, on September 26th, wrote, properly addressed, a letter to Bolin asking his co-operation in procuring evidence as to his then existing state of health. Bolin denied receiving this letter, and the trial court found this statement to be true.

Bolin had a policy in another company, which covered disability benefits, and during the time hereinbefore referred to he was attempting to collect the disability benefits from this other company. He was confined at his home and in a hospital from June 7th, when the operation was performed, to July 1st. It is apparent, of course, that Bolin could not make the conflicting proof to meet the requirements of both companies, even with the aid of his family physician, and this may account for the failure of Dr. Duncan to answer the company's letters. The doctor was not called to deny having received the letters from the company, and there was no testimony that he answered them. In other words, the only information which the company had was that one operation had been performed on Bolin, and another was required, the prognosis of which was unknown. Under these facts, it cannot be said that the company acted arbitrarily in refusing to reinstate Bolin, who had not complied with the requirements of his policy in regard to reinstatement.

The policy was not, therefore, reinstated, unless it was within the apparent scope of Hudgens' authority to do so. The court found that, in view of Bolin's truthful answers, which were not correctly incorporated in the application for reinstatement, and the assurance given Bolin by Hudgens that he had been reinstated, and the retention of the check for the premium, which was retained by the company until October 11th, the policy had been reinstated, and the refusal to accept the third premium constituted a breach of the contract of insurance which entitled Bolin to recover the first and second premiums for the amount of which judgment was rendered, and from which judgment is this appeal.

The letter which is said to constitute the breach of the insurance contract reads as follows:

"Union Life Insurance Company

"Little Rock, Arkansas.
"October 11, 1939.

"Mr. Clarence G. Bolin,
"Murfreesboro, Arkansas.

"Dear Mr. Bolin:

"Policy No. 39-217

"As you know, your policy lapsed for nonpayment of the May 28th annual premium. We later received your application for reinstatement together with a check in full payment of this premium. Our Risk Committee found that before it could approve your reinstatement, it would be necessary to obtain some information from Dr. Good or Dr. Duncan.

"Dr. Good very kindly sent us the requested information, but we have not yet heard from Dr. Duncan, although he was written August 3rd, September 2nd and September 14th. You were then written a letter September 26th, to which we have no reply.

"I regret to say that your policy has now lost its position number and that our file is closed. You will find with this letter the check for $54.85 dated July 17th which you sent us. I am very sorry that your policy could not be reinstated.

"If at any time in the future you again become interested in some insurance, we will be very happy to have one of our agents call on you at that time and take a new application.

"Yours very truly,

"John W. Walker, (signed)
"Agency Secretary."

If the facts stated in this letter are true, there can be no question about the right of the company to declare the policy canceled and to return the check for the current premium. Bolin did not answer this letter, and did not advise the company that he had not received the letter addressed to him under date of September 26th; nor did he ask time in which to furnish evidence of his insurability, assuming that this could have been done. Had he explained that he was unaware that he had not complied with the provisions of his contract in regard to its reinstatement, and have asked time in which to do so, we would have a different question from that presented in the record before us.

It is not contended that Bolin furnished any evidence of his insurability which the contract required; nor was it shown that he was, in fact, an insurable risk. His insistence is that he furnished Hudgens all the evidence which Hudgens said would be required; that he paid the premium; and that the company retained the check for an unreasonable time before returning it.

The policy itself provides that "No person except the President, a Vice-President, the Secretary, or an Assistant Secretary, of the company, has the power, on behalf of the company, . . . to waive any lapse or forfeiture of the company's rights or requirements; and evidence of any such action on the part of such named officers must be in writing."

It is undisputed that Hudgens did not have the authority to reinstate this policy; nor was it within the apparent scope of his authority to do so. The very purpose of the application for reinstatement was to invoke the action of company officials who did have that authority.

It was held in the case of *Gordon* v. *New York Life Ins. Co.*, 187 Ark. 515, 60 S. W. 2d 907, (to quote a headnote) that "A beneficiary was not entitled to recover on an insurance policy which provided that no person could collect premiums unless he held an official receipt, where insured paid a premium to a soliciting agent who had no official receipt, and insured never received the premium."

It is said in Vol. 2 Couch's Cyclopedia of Insurance Law, § 522-A, p. 1496, that "It is further decided that the fact that the assured may not have read the printed conditions of his policy, and, in ignorance of them, relied upon the implied or assumed powers of an insurance agent, cannot help him as it is the business of the assured to know what his contract of insurance is, and that there can be no difference in this respect between an insurance policy and any other contract."

It was held in the case of *National Life & Accident Ins. Co.* v. *Davison*, 187 Ark. 153, 58 S. W. 2d 691, that, while a provision that there shall be no liability unless insured was in sound health at the delivery of the policy may be waived, such provision cannot be waived by a soliciting agent having no authority to issue policies or pass upon applications. That opinion cites numerous other cases to the same effect.

The opinion in the case of *Mutual Life Ins. Co.* v. *Hynson*, 171 Ark. 218, 283 S. W. 357, is also decisive of of this case. A headnote in that case reads as follows: "Where a life insurance policy contained no provision for reinstatement, and the application for reinstatement recited that reinstatement should not take effect until approved by the home office, a local agency had no authority to reinstate the policy, and its acceptance of a check did not constitute a reinstatement; and it was immaterial that insured died before the check was returned by the home office after refusing to reinstate the policy."

In that case only the application for reinstatement, and not the policy itself, provided that reinstatement should not take effect until approved by the home office.

In the instant case the policy sued on so provides. Here, the reinstatement application, which Bolin admits signing, expressly stipulates that there could. be no reinstatement until the application had been approved by the company at its home office, and this provision accords with the terms of the policy itself.

Stress is laid upon the fact that the trial court found—and was warranted in finding—that Bolin correctly answered the questions contained in the reinstatement application. But this fact is not of controlling importance. It would have been had the policy been reinstated. In that event the company would be concluded by the fraud of its agent in not writing the correct answers given by Bolin in the application for the reinstatement. It was so held in the case of *New York Life Ins. Co.* v. *Campbell,* 191 Ark. 54, 83 S. W. 2d 542, where it was said: "Even so, the insurer had a fair opportunity to make such investigation in reference to the truthfulness of the answers contained in the application for reinstatement prior to the reinstatement as it saw fit and when it accepted the insured's statements in reference to his health, and physical condition, and the policy was reinstated by the insurer, the door was forever closed to future investigation." In that case the policy had been reinstated. Here, it had not been, and unless and until it was, there was no contract of insurance.

Nor do we think the company was guilty of any conduct precluding it from asserting that the policy had not be reinstated. It is undisputed that the company did not cash Bolin's check. Of that fact he must have had knowledge, or could have obtained it by inquiry at the bank on which it was drawn. He stands charged with knowledge of the fact that Hudgens did not have authority to reinstate the policy. When advised that the application had been denied, because the company was unable to obtain information as to Bolin's insurability, he did not offer to furnish that information. It is true the policy provides that reinstatement may be made at any time within three months after the policy had lapsed, and the three months had expired on October

11th; but Bolin did not assert that he had not been given the opportunity to make the required proof; nor did he then say that he had assumed the application for reinstatement was sufficient. As we have said, a different question would be presented had this been done. But Bolin's position then was and now is that he was reinstated upon delivering the check to Hudgens and signing the application. In this, as appears from what we have said, he was mistaken.

Appellee cites and relies upon cases similar to *New York Life Ins. Co.* v. *Adams,* 151 Ark. 123, 235 S. W. 412, and *Equitable Life Assurance Society of the U. S.* v. *King,* 178 Ark. 293, 10 S. W. 2d 891, and especially the latter case. But there is a clear and controlling distinction between those cases and the instant case. In both of those cases the policies were reinstated and again put in force. This had been done after the insurer had knowledge, through its agents or general officers, of facts contradictory of those recited in the reinstatement applications, but, notwithstanding this knowledge, retained the premiums for a time found to be unreasonable. In one of those cases the insurer retained the premium until the policy holder made a disability claim, and in the other case the premium was not returned until after the death of the insured.

Here, Bolin's policy was not reinstated. There was a delay of nearly three months in returning the premium; but during that time the company was making, in apparent good faith and with a high degree of indulgence, an effort to ascertain, from Bolin's doctors, the state of Bolin's health. The company had the contractual right to be furnished this information before passing on the reinstatement application. It was not furnished, as appears from what has been herein said, and the company, therefore, had the right to refuse reinstatement, as it did do.

The judgment must, therefore, be reversed, and as the cause appears to have been fully developed, it will be dismissed.