Francille BUTLER, Appellant,

v.

MFA LIFE INSURANCE COMPANY and MFA Mutual Insurance Company, Appellees.

No. 78–1371.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1978.

Decided Jan. 24, 1979.

---

Charles E. Hanks, Fayetteville, Ark., for appellant.

James E. Crouch, Crouch, Blair, Cypert & Waters, Springdale, Ark., for appellees.

Before STEPHENSON and McMILLIAN, Circuit Judges, and ROBINSON,\* Senior District Judge.

RICHARD E. ROBINSON, Senior District Judge.

This case is an appeal from the District Court's[1] entry of Summary Judgment against the appellant Francille Butler. After a careful examination of the law and

---

\* The Honorable Richard E. Robinson, Senior United States District Judge for the District of Nebraska, sitting by designation.

1. The Honorable John E. Miller, Senior U. S. District Judge for the Western District of Arkansas.

the record, we find the appellant failed to raise a genuine issue of material fact. Accordingly, we affirm.

The appellant's husband, Melvin Butler was an insurance agent with the appellee MFA Insurance Company for fourteen years. During his employment, the appellee issued an agent's group life insurance policy to Melvin Butler. A provision in the policy provided a discharged employee with the right to convert the group policy to an individual policy without submitting proof of insurability.[2] To effectuate the conversion, a discharged agent must submit an application form within a limited time period specified in the group policy.[3]

Prior to Melvin Butler's formal employment termination on July 14, 1975, an employee of the appellee, Stella Ravencraft, mailed a memorandum to Melvin Butler which explained the conversion provision and included the necessary forms. On July 25, 1975, Melvin Butler wrote a letter to appellee in which he requested a price quotation and other information about converting the group policy to an individual policy. Stella Ravencraft replied on July 28, 1975 with another memorandum and additional forms. On August 6, 1975, Melvin Butler

sent a second letter to Stella Ravencraft. In an apparent reference to her letter of July 28, 1975, Melvin Butler mentioned the forms and their return date, but claimed he did not receive the forms. He indicated that a third person, "William Looper D.S. M.", was receiving his mail and not forwarding it to him and Melvin Butler again requested the necessary forms and a price quotation. There is no evidence that he gave appellee any address where he could receive his mail. On August 12, 1975, Stella Ravencraft mailed a third memorandum and additional forms. There is no evidence of any further communication between the parties.

When Melvin Butler died on December 20, 1975, the group policy had not been converted to an individual policy. As the beneficiary of the policy, the appellant filed a claim for the proceeds of the policy. The appellee denied the claim for the reason that the insurance coverage ceased after Melvin Butler was discharged.

In the second amendment to her complaint, the appellant alleged that the appellee, or its agents, intentionally or wilfully withheld the insured's mail and communications. This wrongful delay allegedly de-

---

**2.** The provision provides in relevant part:
Conversion Privilege: In the event of the cessation of the Agent's Hospital and Surgical Insurance because of termination of his employment, or his Agent's contract with the Companies, or his attainment of age 65, the Agent may obtain from the Company without furnishing evidence of insurability an individual policy of Hospital Insurance or Hospital and Surgical Insurance subject to the following conditions and provisions:
1. Written application for such individual policy and the payment of the first premium therefor must be made to the Company at its Home Office within thirty-one days after such cessation of insurance.
\* \* \* \* \* \*
3. Such individual policy shall be upon one of the forms then being issued by the Company to Agents whose insurance hereunder has ceased as specified above and who apply for such individual policy pursuant to the provisions of this section, which form shall specify the nature and extent of the coverage afforded, the person or persons covered, the initial premium payable, and all terms and conditions pertaining thereto. However, such individual policy will not provide benefits in any case for which benefits are being paid after

date of termination under the provision of this Plan.
Appendix for Appellant at 18.
and
If the Life Insurance terminates because of termination of service or eligibility and application is made within thirty-one days following the end of the calendar month in which such termination occurred, MFA Life Insurance Company will issue, without evidence of insurability, an individual policy of Life Insurance other than Term Insurance (without Accidental Death and Dismemberment Benefit or Waiver of Premium Benefit). Upon termination or amendment of the Master Policy a conversion right is available, in accordance with the Master Policy, to all Agents insured under the Policy for five or more years.
*Id.* at 11.

**3.** The policy provides in relevant part:
[I]nsurance terminates subject to the extension of benefits Provision:
\* \* \* \* \* \*
(3) When the calendar month ends in which your employment is terminated.
*Id.* at 17.

prived Melvin Butler of his conversion right.[4] After brief discovery, the appellee moved for Summary Judgment.

The Trial Court found Melvin Butler's letters and previous employment indicated "he knew that it was necessary for him to convert the insurance within 31 days after the termination and with this knowledge he utterly neglected to comply with the provisions of the policy relevant to its conversion." *Butler v. MFA Insurance Co.*, 449 F.Supp. 355, 359 (W.D.Ark.1970). The District Court concluded that "all rights and benefits prescribed by the policy [had] ended . . . and since there was no genuine issue as to any material fact, . . . " granted appellee's motion for summary judgment. *Id.* at 360.

When reviewing the Trial Court's entry of Summary Judgment, the Appellate Court applies the same standard as the Trial Court. 10 *Wright & Miller, Federal Practice and Procedure, Civil,* § 2716 (1973). Under Fed.R.Civ.P. 56(c) the motion for summary judgment should be sustained "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

This Circuit has repeatedly emphasized the drastic nature of the summary judgment remedy. It should not be granted unless the moving party has established his right to a judgment with such clarity as to leave no room for controversy and the non-moving party is not entitled to recover under any discernible circumstances. *Jackson v. Star Sprinkler Corp. of Florida,* 575 F.2d 1223, 1226 (8th Cir. 1978); *New England Mutual Life Ins. Co. v. Null,* 554 F.2d 896, 901 (8th Cir. 1977); *Robert Johnson Grain Co. v. Chemical Interchange Co.,* 541 F.2d 207, 209 (8th Cir. 1976). The moving party must overcome a heavy burden and the evidence is viewed in the light most favorable to the non-moving party. The Court must give the non-moving party the benefit of all reasonable inferences to be drawn from the facts. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 158–59, 26 L.Ed.2d 142, 90 S.Ct. 1598 (1970); *Jackson v. Star Sprinkler Corp. of Florida, supra* at 1126; *Goodman v. Parwatikar,* 570 F.2d 801, 803 (8th Cir. 1978). However, this Circuit recognizes the remedy's salutory purpose of avoiding useless and time consuming trials. *Percival v. General Motors Corp.,* 539 F.2d 1126, 1129 (8th Cir. 1976); *Lyons v. Bd. of Ed. of Charleston,* 523 F.2d 340, 347 (8th Cir. 1975).

Under Arkansas law an insurer is required to include a conversion provision in all group life insurance policies. Ark.Stat. Ann. § 66–3516.[5] Since no proof of insura-

---

4. The appellant relied upon Melvin Butler's letter of August 6, 1975, in which he indicated "William Looper D.S.M." was receiving his mail and not forwarding it to him. In her brief the appellant referred to page 125 of the *U. S. Department of Labor, Dictionary of Occupation Titles* (4th ed. 1977), where the abbreviation "D.S.M." is listed as "District Sales Manager (Insurance)."

5. *Conversion on termination of eligibility.*— The group life insurance policy shall contain a provision that if the insurance, or any portion of it, on a person covered under the policy ceases because of termination of employment or of membership in the class or classes eligible for coverage under the policy, such person shall be entitled to have issued to him by the insurer, without evidence of insurability, an individual policy of life insurance without disability or other supplementary benefits, provided application for the individual policy shall be made, and the first premium paid to the insurer, within thirty-one (31) days after such termination, and provided further that:

(1) The individual policy shall, at the option of such person, be on any one of the forms, except term insurance, then customarily issued by the insurer at the age and for the amount applied for;

(2) The individual policy shall be in an amount not in excess of the amount of life insurance which ceases because of such termination, less the amount of any life insurance for which such person is or becomes eligible under any other group policy within thirty-one (31) days after such termination, provided that any amount of insurance which shall have matured on or before the date of such termination as an endowment payable to the person insured, whether in one [1] sum or in installments or in the form of an annuity, shall not, for the purposes of this provision, be included in the amount which is

bility is required,[6] the right to convert the group policy to an individual policy is a valuable contractual right of the discharged employee. *Union Life Ins. Co. v. Bolin*, 201 Ark. 555, 145 S.W.2d 734, 735 (1940); *New York Life Ins. Co. v. Campbell*, 191 Ark. 54, 83 S.W.2d 542, 543–44 (1935). *See also* 17 *Couch, Insurance* § 69.13 (2d ed. 1967); *Vance, Insurance* § 98 (3d ed. 1951). To avoid the inadvertent loss of the conversion right, the insurer must give the discharged employee adequate written notice of the provision, Ark.Stat.Ann. § 66–3519,[7] and it must act on the insured's application for conversion in a reasonable and timely fashion. *New York Life Ins. Co. v. Dandbridge*, 202 Ark. 112, 149 S.W.2d 45, 47–48, 134 A.L.R. 1519 (1941); *Union Life Ins. Co. v. Bolin, supra*, 145 S.W.2d at 735. *See Volis v. Puritan Life Ins. Co.*, 548 F.2d 895 (10th Cir. 1977); *Funk v. Franklin Life Ins. Co.*, 392 F.2d 913 (7th Cir. 1968); *Schiel v. New York Life Ins. Co.*, 178 F.2d 729 (9th Cir.), *cert. denied*, 339 U.S. 931, 70 S.Ct. 668, 94 L.Ed. 1351 (1950).[8]

▮ However, the right to convert the group policy to an individual policy is not an absolute right. The insurance company may properly insist upon the strict perform-

ance by the insured of the conditions precedent contained in the conversion provision. *Life & Cas. Ins. Co. v. Walters*, 207 Ark. 910, 183 S.W.2d 515, 516–17 (1944); *Washington Nat. Ins. Co. v. Simmons*, 201 Ark. 734, 147 S.W.2d 3, 6–7 (1941); *Union Life Ins. Co. v. Bolin, supra*, 145 S.W.2d at 735–38; *National Aid Life Ins. Co. v. Holland*, 199 Ark. 790, 136 S.W.2d 175, 179–80 (1940). *See* 17 *Couch, Insurance* §§ 69:13, 69:64. *See also Annot.*, 105 A.L.R. 478 (1936) *supp.* 164 A.L.R. 1057 (1946). The insured's nonperformance defeats recovery under the policy. As noted by the Arkansas Supreme Court:

> It is true the insured has 31 days in which to exercise the right of conversion, but, during the time he neglects to do so, he is not insured, and, if he dies without having exercised the option, his beneficiary can not recover.

*Aetna Life Ins. Co. v. Carroll*, 188 Ark. 154, 157, 65 S.W.2d 25, 26 (1933).[9]

▮ From the evidence in this case, it is clear that Melvin Butler did not perform the contractual conditions necessary to con-

---

considered to cease because of such termination; and

(3) The premium on the individual policy shall be at the insurer's then customary rate applicable to the form and amount of the individual policy, to the class of risk to which such person then belongs, and to his age attained on the effective date of the individual policy.

Ark.Stat.Ann. § 66–3516.

**6.** *See* note 2 *supra*.

**7.** *Notice as to conversion right.*—If any individual insured under a group life insurance policy hereafter delivered in this State becomes entitled under the terms of such policy to have an individual policy of life insurance issued to him without evidence of insurability, subject to making of application and payment of the first premium within the period specified in such policy, and if such individual is not given notice of the existence of such right at least fifteen (15) days prior to the expiration date of such period, then, in such event the individual shall have an additional period within which to exercise such right, but nothing beyond the period provided in such policy. This additional period shall expire fifteen (15) days next after the individual is given such notice but in no event shall

such additional period extend beyond sixty (60) days next after the expiration date of the period provided in such policy. Written notice presented to the individual or mailed by the insurer to the last known address of the individual as furnished by the policyholder shall constitute notice for the purpose of this section.

Ark.Stat.Ann. § 66–3519.

**8.** *See also* 17 *Couch, Insurance* § 69:129 (2d ed. 1967); 3A *Appleman, Insurance* § 1971 *et seq.*

**9.** There is a split of authority on the requirement of the insured's approval of the application for conversion. Absent a contractual provision, the majority position holds that the performance by the insured of all the conditions precedent effectuates the conversion regardless of the insurer's formal approval. The minority position requires the insurer's formal approval of the application before the conversion is effective. *See Annot.*, 105 A.L.R. 473 (1936) *supp.* 164 A.L.R. 1057 (1946). Arkansas adheres to the minority position, *McCann v. Supreme Tribe B. H.*, 171 Ark. 614, 285 S.W. 361, 362–63 (1926).

However, the insured in the present case failed to submit an application or perform any of the conditions precedent.

vert the group policy to an individual policy. His letters and previous employment demonstrate his knowledge of the contents of the conversion provision and the need to take some affirmative action. Although he wrote to the appellee on August 6, 1975, and requested information and forms, there is no evidence of any further action or communication before his death on December 20, 1975. In view of the policy's expiration following his employment termination in July 1975 and the limited time period in which to convert, the insured can not stand idly by for four and one half months.[10] Since the group policy expired and was not converted to an individual policy before Melvin Butler's death, neither a group nor an individual insurance policy was in force at his death. Accordingly, Summary Judgment was properly entered.

In the second and third amendments to her complaint, the appellant alleged that the life of the policy was extended under two disability provisions. The first provision provides for the waiver of premium payments by those insureds who are totally disabled prior to the age of 60. The waiver continues for one year after termination of insurance because of the disability and submission of proof of disability.[11] The second provision provides for the continuation of the policy for those insureds who are discharged from employment because of a total disability until the disability ends.[12]

██ The policy's definition of total disability [13] is not favorably received by the Arkansas courts, which adopt a more liberal definition:

> "To be totally disabled within the meaning of an insurance policy, insuring against such condition, it is not necessary that the insured should be absolutely helpless; he is totally disabled when he is unable to perform the substantial and material acts of his business or occupation in the usual and customary way."

*New York Life Ins. Co. v. Danbridge,* 204 Ark. 1078, 1083, 166 S.W.2d 1030, 1033 (1943) *quoting Equitable Life Insurance Society v. Barton,* 192 Ark. 984, 96 S.W.2d 480 (1936).

With regard to the first disability provision, the insured must meet several requirements: 1) he must become disabled prior to the age of 60; 2) the insurance must be terminated because of the disability; and 3) proof of disability must be submitted within one year of the termination. The evidence in this case shows the insured reached the age of 60 in 1970. We find it improbable that he continued to operate the insurance office for five years while totally disabled. Secondly, Melvin Butler's policy was not terminated because of his disability. Further, there was no evidence he submitted proof of disability to the appellee.

██ The second disability provision also imposes obligations upon the insured. He must: 1) be terminated because of the disability; 2) elect to continue the policy; and 3) continue to pay premiums. Again, there

---

10. Although his letter of August 6, 1975 was addressed to Stella Ravencraft as an apparent reply to her second memorandum, we assume for the moment that he did not receive his mail. The August 6, 1975 letter indicates Melvin Butler's knowledge that a third person received his mail and did not forward it and, as indicated, *supra* there is no evidence he gave the appellee an address where he could receive his mail.

11. The policy provides:
    Premiums will be waived in the event of total disability (Total Disability is defined as that disability which wholly prevents the Agent from engaging in his customary occupation or any other occupation for remuneration or profit for which he might reasonably be qualified by his education and training) prior to age 60, beginning from the thirty-second day after the date of termination of the insurance because of such disability and continuing for one year. Due proof of total disability must be submitted not later than one year after termination of service. Year-to-year extension, for further periods of one year each, will be made if further proof of continuance of total disability is furnished three months prior to each such year.
    Appendix for appellant at 11.

12. The policy provides:
    Any Agent whose contract or employment terminated because of Total Disability (which occurred while contracted or employed by MFA Insurance Company and while insured under this policy) may elect to continue participation under the policy as well as such Agent's insured Dependents until the end of the month in which Total Disability ceases. *Id.* at 16.

13. *See* note 11 *supra.*

is no evidence Melvin Butler was discharged because of a disability or that he elected to continue the policy. Since Melvin Butler failed to comply with the conditions of the first and second disability provisions, coverage under the policy was not extended beyond the date of Melvin Butler's termination.

The Judgment of the District Court is affirmed.