Lawrence W. HOWARD,

v.

RUSSELL STOVER CANDIES,
INC., Appellee,

United States Fidelity and Guaranty
Co., Appellant.

No. 80–1700.

United States Court of Appeals,
Eighth Circuit.

Submitted March 12, 1981.

Decided May 29, 1981.

Edward Stratemeir, Russell Stover Candies, Inc., Kansas City, Mo., Jeffrey D. Fridkin, Albert W. Thomson, Linde Thomson Fairchild Langworthy & Kohn, Kansas City, Mo., for appellee.

Before BRIGHT and ROSS, Circuit Judges, and HARRIS, Senior District Judge.*

ROSS, Circuit Judge.

Lawrence Howard brought suit against his employer, Russell Stover Candies, Inc., for damages arising from the termination of his employment. Only Count II of the complaint, alleging that Russell Stover failed to issue a service letter in compliance with R.S.Mo. § 290.140,[1] is relevant to this appeal.

In Count II of the complaint, Howard alleged, *inter alia,*

> 22. As a result of defendant's failure to issue a service letter complying with R.S.Mo. § 290.140, plaintiff has been impaired in his ability to secure other employment, and has suffered damages thereby in the amount of Twenty-Five Thousand Dollars ($25,000.00).
>
> 23. Defendant's failure to issue a service letter complying with R.S.Mo. § 290.-140 was intentional, willful, wanton and malicious. Plaintiff is therefore entitled to punitive damages in the amount of One Hundred Thousand Dollars ($100,-000.00).

Howard does not attack the veracity of the statements contained in the service letter

Clyde G. Meise and Jerald S. Enslein, Meise, Cope & Coen, Kansas City, Mo., for appellant.

---

* The Honorable Oren Harris, United States Senior District Judge for the Eastern and Western Districts of Arkansas, sitting by designation.

1. The service letter statute, R.S.Mo. § 290.140 provides:

   290.140. Letter of dismissal, when—failure, misdemeanor

   Whenever any employee of any corporation doing business in this state shall be discharged or voluntarily quit the service of such corporation, it shall be the duty of the superintendent or manager of said corporation, upon the written request of such employee to him, if such employee shall have been in the service of said corporation for a period of at least ninety days, to issue to such employee a letter, duly signed by such superintendent or manager, setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee has quit such service; and if any such superintendent or manager shall fail or refuse to issue such letter to such employee when so requested by such employee, such superintendent or manager shall be deemed guilty of a misdemeanor, and shall be punished by a fine in any sum not exceeding five hundred dollars, or by imprisonment in the county jail for a period not exceeding one year, or by both such fine and imprisonment.

but instead contends that the letter does not contain the true reason for his discharge. Howard's underlying theory is that Russell Stover has engaged in the systematic discriminatory discharge of employees over the age of forty years.

At all times relevant to this matter, Russell Stover was insured by United States Fidelity and Guaranty (USF&G) under a comprehensive general liability policy. Under the liability provisions of the supplement to the policy, USF&G had the

> right and duty to defend any suit against the Insured seeking damages on account of such injury even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

Pursuant to this provision, Russell Stover asked USF&G to defend it against Count II[2] of Howard's complaint. When USF&G refused to undertake the defense of the suit, Russell Stover impleaded USF&G by third party complaint, alleging that USF&G had a contractual duty to defend under the terms of the policy.

USF&G filed a complaint asking for a declaratory judgment, claiming its policy and endorsement did not cover the alleged personal injury to Howard. Russell Stover then moved for summary judgment against USF&G on the ground that the endorsement to the policy expressly covered all personal injury resulting from service letters. Russell Stover asserted that the question before the court was solely a matter of interpretation of the endorsement to the policy and that there was no genuine issue of material fact.

The district court[3] granted Russell Stover's motion for summary judgment. The court found that Count II of Howard's complaint was potentially within the policy's coverage and that USF&G therefore had an affirmative duty to defend its insured.

The issue presented on appeal is whether Count II of Howard's complaint is potentially within the coverage of the policy, thereby creating an affirmative duty on the part of the insurer, USF&G, to defend its insured, Russell Stover.

The relevant terms of the comprehensive general liability insurance policy and its endorsement are set forth below. A supplement to the policy specifically covers:

1. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY

    A. The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the Named Insured's business designated in the declarations:

    Group A—false arrest, detention or imprisonment, or malicious prosecution;

    Group B—the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the Named Insured;

    Group C—wrongful entry or eviction, or other invasion of the right of private occupancy; herein called "personal injury"; or

    Group D—libel, slander, defamation, invasion of the right of privacy, piracy, unfair competition or idea misappropriation under an implied contract, or infringement of copyright, title or slogan, arising out of the Named Insured's advertising activities; herein called "advertising injury";

---

2. The duty to defend and our discussion herein relates only to Count II of the complaint.

3. The Honorable Howard F. Sachs, District Judge, United States District Court for the Western District of Missouri.

The policy contains two exclusions pertinent to our discussion:

The insurance does not apply:

2. to personal injury sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the Named Insured but this exclusion shall be inapplicable if so indicated in the schedule of this endorsement;

\* \* \* \* \* \*

6. to personal injury or advertising injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any Insured;

An endorsement to the policy "modifies such insurance as is afforded by the provisions of the policy" and provides:

IT IS UNDERSTOOD AND AGREED THAT THE COVERAGE FOR PERSONAL INJURY AS PROVIDED BY CASUALTY 204 [the policy in question] COVERS PERSONAL INJURY RESULTING FROM SERVICE LETTERS, BUT ONLY AS RESPECTS THE EXISTING TERMS AND CONDITIONS OF SUCH COVERAGE ON CASUALTY 204.

■ This court has recognized the appropriateness of summary judgment in resolving disputes involving the interpretation of unambiguous contracts. *Champale, Inc. v. Joseph S. Pickett & Sons, Inc.*, 599 F.2d 857, 859 (8th Cir. 1979); *Parish v. Howard*, 459 F.2d 616, 618 (8th Cir. 1972). In reviewing a decision of a district court to grant a motion for summary judgment, we apply the same standard as the trial court. *Butler v. MFA Life Ins. Co.*, 591 F.2d 448, 451 (8th Cir. 1979).

■ Summary judgment should be granted only where there is "no genuine issue as to any material fact and \* \* \* the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Moreover, the court must view the facts in the light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences to be drawn from the facts. *Butler v. MFA Life Ins. Co., supra*, 591 F.2d at 451.

■ The general principles of Missouri law to be applied in construing insurance policies are well established. Plain and unambiguous language must be given its plain meaning. The contract should be construed as a whole; but, insofar as open to different constructions, that most favorable to the insured must be adopted. *Kyte v. Fireman's Fund Am. Ins. Companies*, 549 S.W.2d 366, 367–68 (Mo.App.1977).

Plain language in an insurance policy cannot be used to create an ambiguity where none exists; but if the policy is reasonably susceptible of more than one meaning, the ambiguity will be resolved in favor of the insured. Although parties to an insurance contract may, by plain language, limit the liability of the insurer to the insured, ambiguities in restrictive or exclusionary clauses are to be construed in favor of the insured.

*Kay v. Metropolitan Life Ins. Co.*, 548 S.W.2d 629, 631 (Mo.App.1977) (citations omitted).

Finally, we note that

[t]he policy of insurance and an endorsement must be read together where there is a dispute as to its meaning, and they should be construed together unless they are in such conflict they cannot be reconciled. If the language of the endorsement and the general provisions of the policy conflict, the endorsement will prevail, and the policy remains in effect as altered by the endorsement.

*Abco Tank & Mfg. Co. v. Fed. Ins. Co.*, 550 S.W.2d 193, 198 (Mo.1977) (citations omitted).

The district court reconciled the endorsement with the policy by construing the endorsement to at least cover all personal injuries arising from a nonwillful violation of the service letter statute, in addition to those injuries enumerated in the policy.

On appeal, USF&G contends that the language "but only as respects the existing terms and conditions of such coverage on [the policy]" should be construed to limit coverage for service letters to the four enu-

merated types of injuries. Thus, USF&G argues that failure to send a proper service letter is not covered by the endorsement unless the service letter is also libelous or slanderous.

The district court concluded that such an interpretation of the endorsement provision would render it "meaningless and unnecessary," finding instead that "the provision was meant to extend the 'personal injury' coverage to include injuries from service letters *in addition to* the other injuries enumerated, subject of course to the same terms and conditions under the policy as were other injuries, * * *." The court went on to conclude that "[e]ven if the 'but only' clause was reasonably susceptible to some other interpretation," under Missouri law "the clause must be construed in favor of the insured."

Finally, the district court rejected USF&G's argument that the exclusion dealing with willful violations of penal statutes would exclude coverage for injuries resulting from violations of the service letter statute.[4] "[R]eading the endorsement consistently with the exclusion," the court held that "coverage is extended to injuries as a result of service letters unless the violation of the statute was *willful.*" (Emphasis supplied.)

■ Our independent judgment as to the meaning of the insurance policy, *Ralston Purina Co. v. Hartford Acc. & Indem. Co.,* 540 F.2d 915, 918 n.3 (8th Cir. 1976), is in accord with that of the district court. We agree with the district court that the policy is unambiguous and that no genuine issue of material fact exists with respect to the issue raised on summary judgment as to USF&G's duty to defend Russell Stover against Count II of Howard's complaint.

Reading the terms and provisions of the policy as a whole, *St. Louis-San Francisco Railway Co. v. Armco Steel Corp.,* 490 F.2d 367, 371 (8th Cir.), *cert. denied,* 417 U.S. 969, 94 S.Ct. 3173, 41 L.Ed.2d 1140 (1974), and strictly construing the exclusions to the policy, as we must, *Allison v. National Insurance Underwriters,* 487 S.W.2d 257, 262 (Mo.App.1972), we conclude that the district court did not err.

■ We also agree with the district court that the insurer owes a duty of defense where, as here, the allegations of the plaintiff's complaint are potentially within the coverage of the insurance contract.

Under Missouri law, the duty of a liability insurer to defend pursuant to its agreement is ordinarily determined by comparing the language of the insurance contract and the allegations of the petition or complaint in the action brought by the person injured or damaged against the insured. * * * Courts have generally placed the burden of uncertainty as to a policy's coverage on the insurer. Where the allegations of a plaintiff's complaint * * * state a claim which is *potentially* or arguably within the policy's coverage, the insurer must accept defense of the claim.

*Hartford Accident and Indemnity v. Krekeler,* 491 F.2d 884, 886–87 (8th Cir. 1974), quoting *Lane v. Hartford Fire Insurance Co.,* 343 F.Supp. 79, 82, 84–85 (E.D.Mo.1972) (emphasis added).

Howard's complaint alleges either a willful or nonwillful violation of the Missouri service letter statute. The district court reasoned that the alleged nonwillful violation of the statute was within the coverage of the endorsement to the policy. Since this allegation "state[s] a claim which is potentially or arguably within the policy's

---

**4.** The district court did not discuss exclusion two of the policy. That provision specifically excludes personal injuries which are "directly or indirectly" related to employment unless nullified by an endorsement to the policy. Since service letters are inherently related to employment, it would seem incongruous to read the endorsement to preclude the very coverage it purports to extend (i. e. for personal injuries arising from service letters) on the ba-

sis of this exclusion. Hence, under the terms of the policy, we consider the endorsement to have nullified the second exclusion. Under general principles of contract construction, *Abco Tank & Mfg. Co. v. Fed. Ins. Co.,* 550 S.W.2d 193, 198 (Mo.1977), this apparent conflict between the endorsement and the policy's exclusionary provision would also be resolved by upholding the terms of the endorsement.

coverage," id., we agree with the district court that the insurer must accept defense of the claim.

 We note that the duty to defend is not coextensive with the duty to indemnify. Rather, "the duty of an insurer to defend its insured is broader than its duty to pay a judgment rendered against its insured." *U. S. Fidelity & Guaranty Co. v. Louis A. Roser Co.*, 585 F.2d 932, 936 (8th Cir. 1978) (construing a provision similar to ours which gave USF&G the "right and duty to defend any suit against the insured * * * even if any of the allegations of the suit are groundless, false, or fraudulent. . . .") And the provisions for defense in the insurance policy here, as in *Roser* and *Lane v. Hartford Fire Insurance Co.*, *supra*, 343 F.Supp. at 84, are very broad, calling for defense even against allegations which are "groundless, false, or fraudulent."

It is impossible to determine the basis on which the plaintiff will recover, if at all, until the end of the trial. Although it is in the common interest of Russell Stover and USF&G to prevent Howard from making *any* recovery on his claim, a potential conflict between the interests of the insurer and its insured in this case is apparent. In Count II of his complaint, Howard relies on two separate, alternative grounds for relief, one alleging a nonwillful statutory violation covered by the policy, and one alleging a willful statutory violation outside the scope of coverage.

> Common logic dictates that in such circumstances, counsel for USF&G would be inclined, albeit acting in good faith, to bend his efforts, however unconsciously, toward establishing that any recovery by [the plaintiff] would be grounded on the theory of [the plaintiff's] claim which was not covered by the policy.

*U. S. Fidelity & Guaranty Co. v. Louis A. Roser Co.*, *supra*, 585 F.2d at 938.

 This potential conflict of interest, however, does not relieve USF&G of its contractual obligation to defend Russell Stover against Count II of Howard's complaint. To avoid the potential conflict of interest, USF&G "must either provide an independent attorney to represent the insured or pay the costs incurred by the insured in hiring counsel of its own choice." *See U. S. Fidelity & Guaranty Co. v. Louis A. Roser Co.*, *supra*, 585 F.2d at 939 n.6 and accompanying text. *See also generally, id.* at 937–39.

In sum, we find the supplemental agreement, its endorsement, and the relevant exclusions to be unambiguous and we agree with the district court's construction of these provisions. For the reasons set forth above, we conclude that the judgment of the district court is correct and we therefore affirm.